La Crosse Rendering Works, Inc., Appellant, vs. City of La Crosse and others, Respondents.

*March 8—June 6, 1939.*

440

442

444

For the appellant there were briefs by *Scheinfeld, Collins, Durant & Winter* of Milwaukee and *A. H. Schubert* of La Crosse, and oral argument by *W. B. Collins* and *Elmer L. Winter*.

*Fred E. Steele* of La Crosse, for the respondents.

The following opinion was filed April 11, 1939:

Martin, J.   Appellant's contentions may be briefly summarized thus:

(1) That Ordinance No. 543, enacted March 28, 1914, granted to Philip Martin and to his successors and assigns,

the right to conduct a rendering plant in the city of La Crosse for a period of fifty years at its present site; that the right or license granted by said ordinance was accepted and acted upon by the original grantee and his assigns, and large investments having been made in reliance upon such right or license, plaintiff has acquired such vested property rights that they cannot now be interfered with;

(2) That Ordinance No. 1074, which provides for licensing rendering plants, is void;

(3) That the defendant city lacked power to enact Ordinance No. 1074, under sec. 62.11 (5), Stats., because the supervision, inspection, location, construction, and operation of all rendering plants are directly under the state board of health.

The defendants contend:

(1) That Ordinance No. 543 is not an irrevocable franchise or contract; that it created a mere permit or license which might be repealed or changed by a subsequent ordinance because the city could not abrogate its police power by contract or otherwise;

(2) That the city had the power to revoke Ordinance No. 543 as a corollary of its power to license, and that the city did not act unreasonably or arbitrarily in revoking said ordinance;

(3) That Ordinance No. 1074 is a valid exercise of the power granted to the city;

(4) That secs. 146.11 and 146.12, Stats., granting certain powers to the state board of health regarding rendering plants do not deprive the city of its right to prescribe and enforce additional regulations and restrictions; and

(5) That the demurrer was properly sustained as to the claim for damages.

While many contentions are made and are ably argued in the briefs of counsel, we think the main legal question involved is, whether the city of La Crosse could abrogate its police power by contract or otherwise. If the defendant city could not divest itself of its police power, then Ordinance

No. 543 granted to Philip Martin, his successors and assigns, a mere permit or license which might be revoked at any time providing the city did not act unreasonably or arbitrarily. The appellant's contention is that by virtue of Ordinance No. 543 which was granted to Philip Martin, his successors and assigns, the rights conferred were absolute for a period of fifty years, and that because substantial investments have been made in reliance upon the assumed right or license to operate a rendering plant in the defendant city for such period of time, appellant now has such a vested property right that the city is without power to license, regulate, or otherwise interfere with the operations of its plant.

One of the leading cases in this country relating to the exercise of the police power is *Ex parte Hadacheck,* 165 Cal. 416, 132 Pac. 584, and on appeal to the supreme court of the United States reported in *Hadacheck v. Los Angeles,* 239 U. S. 394, 36 Sup. Ct. 143, 60 L. Ed. 348. In that case, the plaintiff in error was convicted of a misdemeanor for the violation of an ordinance of the city of Los Angeles, which made it unlawful for any person to establish or operate a brickyard or brickkiln, or any establishment, factory, or place for the manufacture or burning of brick within described limits of the city. The plaintiff in error was the owner of a tract of land within the limits described in the ordinance, upon which tract of land there was a very valuable bed of clay, of great value for the manufacture of brick of fine quality. It was alleged and not denied that the tract of land was worth about $800,000 for the manufacture of brick and worth not to exceed $60,000 for residential purposes or for any purpose other than the manufacture of brick. When the plaintiff in error purchased said tract of land it was outside the limits of the city and distant from dwellings and other habitations. The plaintiff alleged that at the time he purchased said tract of land he did not expect or believe that the territory would be annexed to the city of Los Angeles;

that he erected expensive machinery for the manufacture of bricks of fine quality. There was a further allegation that if the ordinance be held valid, plaintiff would be compelled to entirely abandon his business and would be deprived of the use of his property. Plaintiff further alleged that his business was so conducted as not to be in any way or degree a nuisance; no noises arose therefrom, and no noxious odors, and that by the use of certain means provided and the situation of the brickyard, an extremely small amount of smoke was emitted from any kiln and what was emitted was so dissipated that it was not a nuisance in any manner detrimental to health or comfort. It further appeared that plaintiff had operated his brickyard for seven years and that no complaint had been made nor had any attempt ever been made to regulate it. The chief of police in his return denied that the ordinance was arbitrarily directed against the business of the plaintiff; also denied that the brickyard was conducted or could be conducted sanitarily or was not offensive to health. The officer's return was supported by affidavits which set forth that the fumes, gases, smoke, soot, steam, and dust arising from plaintiff's brickmaking plant had from time to time caused sickness and serious discomfort to those living in the vicinity. The supreme court of California sustained the ordinance as a valid exercise of the police power. In affirming the judgment the United States supreme court said at page 408:

"The court considered the business one which could be regulated and that regulation was not precluded by the fact 'that the value of investments made in the business prior to any legislative action will be greatly diminished,' and that no complaint could be based upon the fact that petitioner had been carrying on the trade in that locality for a long period."

The court further said at page 409:

"We think the conclusion of the court [supreme court of California] is justified by the evidence and makes it unneces-

sary to review the many cases cited by petitioner in which it is decided that the police power of a state cannot be arbitrarily exercised. The principle is familiar, but in any given case it must plainly appear to apply. It is to be remembered that we are dealing with one of the most essential powers of government, one that is the least limitable. It may, indeed, seem harsh in its exercise, usually is on some individual, but the imperative necessity for its existence precludes any limitation upon it when not exerted arbitrarily. A vested interest cannot be asserted against it because of conditions once obtaining. *Chicago & Alton R. R. v. Tranbarger,* 238 U. S. 67, 78. To so hold would preclude development and fix a city forever in its primitive conditions. There must be progress, and if in its march private interests are in the way they must yield to the good of the community." To the same effect see *Reinman v. Little Rock,* 237 U. S. 171, 35 Sup. Ct. 511, 59 L. Ed. 900; *Nashville, Chattanooga & St. Louis Ry. v. Walters, Commissioner of Highways,* 294 U. S. 405, 55 Sup. Ct. 486, 79 L. Ed. 949; *Miller v. Schoene,* 276 U. S. 272, 48 Sup. Ct. 246, 72 L. Ed. 568; *Home Building & Loan Asso. v. Blaisdell,* 290 U. S. 398, 54 Sup. Ct. 231, 78 L. Ed. 413; *Fertilizing Co. v. Hyde Park,* 97 U. S. 659, 24 L. Ed. 1036; *Beer Co. v. Massachusetts,* 97 U. S. 25, 28, 24 L. Ed. 989; *Butchers' Union Co. v. Crescent City Co.* 111 U. S. 746, 4 Sup. Ct. 652, 28 L. Ed. 585; *Northern Pacific Ry. v. Duluth,* 208 U. S. 583, 28 Sup. Ct. 341, 52 L. Ed. 630; *Texas & New Orleans Railroad v. Miller,* 221 U. S. 408, 31 Sup. Ct. 534, 55 L. Ed. 789; *Pearsall v. Great Northern Ry.* 161 U. S. 646, 16 Sup. Ct. 705, 40 L. Ed. 838; *New York & N. E. R. Co. v. Bristol,* 151 U. S. 556, 14 Sup. Ct. 437, 38 L. Ed. 269; *Mugler v. Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; *Portland v. Cook,* 48 Or. 550, 87 Pac. 772.

In *Fertilizing Co. v. Hyde Park, supra,* the Fertilizing Company was incorporated by an act of the legislature which provided that it should have continued succession and existence for the term of fifty years, and which authorized it to maintain a chemical works in a certain area. Subsequently, before the fifty-year term had expired, under power granted to it by the legislature, the village of Hyde Park enacted an

ordinance which would prevent the company from operating a chemical works in the area in which it had been authorized to operate by the prior charter granted to it by the legislature. The court held that the village of Hyde Park could enforce the ordinance and that the charter from the legislature "was not a contract guaranteeing that the company, notwithstanding its business might become a nuisance by reason of the growth of population around the place originally selected for its works, should for fifty years be exempt from the exercise of the police power of the state." (p. 660.)

In *Butchers' Union Co. v. Crescent City Co., supra,* the legislature of Louisiana granted plaintiff exclusive privileges for stock landing and slaughterhouses at New Orleans, for twenty-five years. Subsequently, within the twenty-five-year period, the city of New Orleans, under a provision of the state constitution, granted privileges for slaughterhouses and stock landing at New Orleans to defendants. The court held that the city of New Orleans could grant subsequent privileges to defendants for the reason that the legislature could not by contract limit the exercise of the police power in regard to public health and public morals, to the prejudice of the general welfare.

In *Portland v. J. H. Cook, supra,* on February 12, 1896, the city of Portland, by ordinance, granted to one Zimmerman and his assigns the right to establish and maintain on his land in the city of Portland, particularly describing the premises, a packing house for curing all kinds of meat, and to erect other buildings in which to slaughter animals. Thereafter, Zimmerman erected the specified buildings, expending in such improvements more than $40,000. Subsequently, the city enacted another ordinance repealing the original ordinance of February 12, 1896. Defendants there contended that acting in good faith upon the ordinance enacted, he had expended a vast sum of money in making permanent improvements, whereby such right became a subsisting contract

between him and the city which could not be impaired by subsequent legislation. The court said (p. 773) :

"The preservation of the public health and public morals is a duty devolving on the state, the discharge of which is denominated an exercise of the police power. This prerogative, though incapable of exact definition or limitation, may be delegated by the state to its agent, a municipal corporation, which is authorized to employ the measure of authority conferred. As the perpetuity of a stable government necessarily depends upon the security of the public health and the maintenance of public morals, *neither the state nor its agent can bargain away this branch of sovereignty.* As a corollary deducible from this principle, it results that any permission by statute or ordinance whereby such authority is temporarily surrendered is only a license, a cancellation of which is not violative of a state or of the federal constitution prohibiting the passage of laws impairing the obligation of contracts."

In 12 Am. Jur. p. 54, § 421, the rule is stated thus :

"The constitutional protection of the obligation of contracts is necessarily subject to the police power of the state, and therefore a statute passed in the legitimate exercise of the police power will be upheld by the courts, although it incidentally destroys existing contract rights. . . . All contracts made with reference to any matter that is subject to regulation under the police power must be understood as made in reference to the possible exercise of that power."

And at p. 57, § 422, it is said :

"The power to legislate in the interest of the morals, health, and safety of the public is not restricted by the contract clause of the constitution, the exercise of the police power cannot be limited by contract, and it is immaterial on what consideration the contracts rest, *since in all cases it is beyond the authority of a state or its municipalities to abrogate this power so necessary to the public safety."* See cases cited under Note 1, on page 57. To the same effect see 12 C. J. pp. 993, 1011; 6 R. C. L. pp. 190, 191, 337.

In *Koshkonong Mud Creek D. Dist. v. Bodeman,* 197 Wis. 261, 221 N. W. 864, reference is made to the difference

between the exercise of the police power and the exercise of other powers. At page 266 the court said:

"It is further urged that persons joining in the creation of the district, either as voluntary petitioners or otherwise, became clothed with certain property rights in connection with the assessments made, money paid, and work done and benefits resulting to the property involved, and that such property rights cannot thereafter be destroyed by any dissolution proceedings.

"We know of no recognized theory in the law upon which it can be said that in the exercise of its police power, within the field of which it is conceded these are, the state confers upon persons, directly or indirectly affected thereby, a property right to have a perpetual continuing of such particular police power or any right to object to the withdrawal of such prior particular exercise of that power except upon compensation. To uphold appellants' contention in this regard, however, would be to overlook the plain and wide distinction repeatedly declared to exist between that which is done under the legislative power of eminent domain and that which is done in the exercise of its police power."

In *Indiana ex rel. Anderson v. Brand* (1938), 303 U. S. 95, 108, 58 Sup. Ct. 443, 82 L. Ed. 685, the court said:

"Our decisions recognize that every contract is made subject to the implied condition that its fulfilment may be frustrated by a proper exercise of the police power but we have repeatedly said that, in order to have this effect, the exercise of the power must be for an end which is in fact public and the means adopted must be reasonably adapted to that end."

In the instant case, it must be held that the defendant city could not and did not, by the enactment of Ordinance No. 543, divest itself of its right to thereafter in the exercise of its police power, repeal said ordinance and enact Ordinance No. 1074. The appellant does not contend that the defendants acted unreasonably or arbitrarily in the repeal of Ordinance No. 543 and the enactment of Ordinance No. 1074. Its contention is that by virtue of the original ordinance, it

has acquired an absolute vested property right to operate its rendering plant in the defendant city for the remainder of the fifty-year period, without any interference by the city. It further contends that it is subject to supervision and inspection only by the state board of health.

It should be noted that section 2 of Ordinance No. 543 provides:

"The business herein licensed to be carried on said premises shall at all times be subject to the police supervision of the city of La Crosse and shall be conducted under the supervision and inspection of the health department; and shall be equipped and kept equipped with modern machinery and appliances and shall be so carried on as to create no offensive smell or nuisance in said city."

It appears that the health officer of the defendant city filed a complaint against appellant charging that it had violated the provisions of section 2 of Ordinance No. 543 by permitting offensive smells to emit from its rendering plant. A hearing was had on such complaint on August 22, 1938. Appellant admits receiving notice of the charge of violation, the date on which hearing would be held, and that appellant would be permitted to attend the hearing and be represented by counsel, and would be accorded the right to present witnesses relative to the matter complained of. While it does not appear that appellant by any of its officers or attorney attended the meeting of August 22d, or that appellant offered any evidence in denial of the charges made, it is definitely alleged that a hearing was held, and that following such hearing the common council of defendant city adopted an ordinance revoking Ordinance No. 543. It further appears that on August 30, 1938, the city attorney notified appellant's secretary and general manager that it would have to cease operations until it obtained a license to operate under the provisions of Ordinance No. 1074. In so far as it appears from the complaint, the appellant company completely ignored the complaint made against it by the health officer of

the defendant city, notwithstanding the fact that section 2 of the original ordinance specifically provides that appellant's rendering business shall at all times be subject to the police supervision of the defendant city and shall be conducted under the supervision and inspection of its health department. Since it must be held that the original ordinance of 1914 operated merely as a license to Philip Martin and his successors and assigns to operate a rendering plant subject to the restrictions and limitations of said ordinance, it necessarily follows that such license may be revoked for cause or repealed by the city through the exercise of its police power.

Appellant's contention that the city of La Crosse lacked power to enact Ordinance No. 1074 because the supervision, inspection, location, construction, and operation of rendering plants is under the state board of health cannot be sustained. Sec. 62.11 (5), Stats., with reference to the city's power to enact ordinances, provides:

"(5) *Powers.* Except as elsewhere in the statutes specifically provided, the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language."

Sec. 66.05 (7), Stats., provides:

"(7) *Offensive industry.* Any city council or village board may direct the location, management, and construction of, and license, regulate, or prohibit any industry, thing, or place where any nauseous, offensive or unwholesome business may be carried on, within the city or village or within four miles of the boundaries. . . ."

Sec. 146.11 (2), Stats., relating to slaughterhouses, is also applicable to rendering plants. The statute provides:

"Slaughterhouses not subject to federal inspection and supervision shall be inspected and supervised, as to location, construction and operation, by the state board of health, and said board shall cause each such slaughterhouse to be inspected at least once a year. In cities of the first class, such slaughterhouses may be located only on sites approved by the local health officer, the inspector of buildings and the common council. The local health officer, upon complaint or upon the request of the state board, shall make such inspection of slaughterhouses as may be necessary. Violation of the rules and regulations of the state board shall be promptly reported by the local health officer. The state board may inspect slaughterhouses under federal inspection, and shall enforce state law as to all slaughterhouses, and make such order as may be necessary to correct insanitary conditions. Each order shall specify the time within which it shall be complied with, and shall be served in person or by registered mail."

Sec. 146.12, Stats., provides that subs. (2), (3), (4), and (5) of sec. 146.11 shall apply to rendering plants or similar institutions, where carcasses or offal of animals or similar material is handled.

It should be noted that sec. 146.11 (2), Stats., provides that slaughterhouses not subject to federal inspection and supervision shall be inspected and supervised as to *location, construction, and operation,* by the state board of health, and that there shall be an inspection at least once a year. This statute further provides:

"The local health officer, upon complaint or upon the request of the state board, shall make such inspection of slaughterhouses as may be necessary."

It is obvious that the legislature did not intend to confer exclusive jurisdiction upon the state board of health because the statute specifically directs that the local health officer shall upon complaint or upon the request of the state board make such inspection as may be necessary, and sec. 66.05

(7), Stats., contains a specific grant of power to cities to "license, regulate, or prohibit" such an institution as a rendering plant. In this connection, appellant argues that the general rule that where the state has entered the field of regulation, municipalities may not make regulations inconsistent therewith, is applicable in the instant case, because secs. 146.11 and 146.12, confer certain powers upon the state board of health, to inspect and supervise rendering plants, as to location, construction, and operation. The rule referred to is a correct statement of the law, but when applied to the facts in the instant case it has no particular application, first, because sec. 146.11 (2) does not confer exclusive jurisdiction upon the state board of health, and, secondly, because said section specifically makes it the duty of the local health officer upon complaint to make such inspection of rendering plants as may be necessary. It also makes it the duty of the local health officer to make such inspection upon the request of the state board of health. However, as this court held in *Fox v. Racine*, 225 Wis. 542, 545, 275 N. W. 513:

" 'The mere fact that the state, in the exercise of the police power, has made certain regulations does not . . . prohibit a municipality from exacting additional requirements. So long as there is no conflict between the two, and the requirements of the municipal by-law are not in themselves pernicious, as being unreasonable or discriminatory, both will stand, but municipal authorities, under a general grant of power, cannot adopt ordinances which infringe the spirit of a state law or are repugnant to the general policy of the state.' "

And at page 546, the court adopts the general rule as stated in 43 C. J. pp. 219, 220, § 220 (b) :

" 'As a general rule, additional regulation to that of the state law does not constitute a conflict therewith. The fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith, unless the statute limits the requirement for all cases to its own prescriptions.' "

In the case of *Fox v. Racine, supra,* the statute, sec. 352.48
(1) prohibited all endurance contests "wherein any person
participates in such contest for a period of more than sixteen
hours in any twenty-four hours over a period of more than
six days in one month." An ordinance of the city of Racine
prohibited endurance contests altogether. It was contended
that the statute superseded and nullified the ordinance. The
trial court held that sec. 352.48 (1), Stats., did limit by ex-
press language the provisions of the city ordinance within
the meaning and contemplation of the last provision in sec.
62.11 (5). In reversing the judgment of the lower court,
this court said at page 544:

"An examination of sec. 352.48 (1), Stats. 1935, does
not disclose any basis, in the nature of any express language
in that statute, for that conclusion."

(The language thus referred to is the last sentence of
sec. 62.11 (5), Stats., which reads: "The powers hereby con-
ferred . . . shall be limited only by express language.")

The court further said (p. 544):

"In so far as legislative action is concerned, the most that
can be said is that the legislature, in prohibiting such contests
only where their duration exceeds in point of time the period
specified in the statute, has by implication indicated tolerance
thereof when they are not conducted in excess of that period.
But, even if such contests, when not conducted in excess of
the period specified in sec. 352.48 (1), Stats., can be deemed
legalized thereby by implication, that implication cannot be
held to constitute such 'express language' as is required by
sec. 62.11 (5), Stats., in order to effectively limit the city's
powers thereunder to enact and enforce such an ordinance.
Because the limitation of those powers otherwise than by
'express language' is specifically precluded in this state by the
last clause in sec. 62.11 (5), Stats., the decision in *National
Amusement Co. v. Johnson,* 270 Mich. 613, 259 N. W. 342,
is not in point. 'That sec. 62.11,' as we said in *Hack v. Min-
eral Point,* 203 Wis. 215, 219, 221, 233 N. W. 82, 'confers
power far beyond that conferred in the so-called general wel-
fare clause of the general charter as it stood prior to 1921 is

plain, and a city operating under the general charter, finding no limitations in express language, has under the provisions of this chapter all the powers that the legislature could by any possibility confer upon it.' "

And in quoting at page 546 from *Milwaukee v. Childs Co.* 195 Wis. 148, 151, 217 N. W. 703, the court said:

" 'Municipalities may enact ordinances in the same field and on the same subject covered by state legislation where such ordinances do not conflict with, but rather complement, the state legislation.' "

Further, the court said (p. 546) :

"The statute, as well as the ordinance, in the case at bar, is prohibitory, and the difference between them is only that the ordinance goes farther in its prohibition,—but not counter to the prohibition under the statute. The city does not attempt to authorize by this ordinance what the legislature has forbidden; nor does it forbid what the legislature has expressly licensed, authorized, or required. Under those circumstances there is nothing contradictory between the provisions of the statute and of the ordinance because of which they cannot coexist and be effective. Unless legislative provisions are contradictory in the sense that they cannot coexist, they are not to be deemed inconsistent because of mere lack of uniformity in detail."

We conclude that in so far as secs. 146.11 and 146.12, Stats., confer certain powers upon the state board of health, there is no conflict or inconsistency between the statutes and the provisions of Ordinance No. 1074 which would render said ordinance invalid and ineffective.

Appellant further contends that Ordinance No. 1074 is void because it confers arbitrary powers to grant licenses upon the common council. In support of this contention, the appellant argues that there is no standard or regulation to be considered or weighed by the common council in its exercise of discretion in granting or refusing licenses. Of course, it is elementary that there must be a standard, and we are of the view that Ordinance No. 1074 contains suffi-

cient, definite standards to satisfy the requirements under the decisions of this court in *Lerner v. Delavan,* 203 Wis. 32, 233 N. W. 608; *Juneau v. Badger Co-operative Oil Co.* 227 Wis. 620, 277 N. W. 666; *Milwaukee v. Ruplinger,* 155 Wis. 391, 145 N. W. 42.

It is our conclusion that the complaint fails to state facts sufficient to constitute a cause of action, and that the order sustaining the defendants' demurrer must be affirmed.

*By the Court.*—Order affirmed.

A motion for a rehearing was denied, with $25 costs, on June 6, 1939.