HIGHWAY 100 AUTO WRECKERS, INC., and others, Respondents, v. CITY OF WEST ALLIS, Appellant.*

*March 2—April 7, 1959.*

* Motion for rehearing denied, without costs, on June 26, 1959.

638

For the appellant there was a brief and oral argument by *George A. Schmus,* city attorney, and *Charles G. Panosian,* assistant city attorney.

For the respondents there was a brief by *A. M. Chudnow, Earl F. Keegan, Jr.,* and *Richard Y. Fisher,* attorneys, and *Harry A. Kovenock* of counsel, all of Milwaukee, and oral argument by *Mr. Chudnow.*

Brown, J. This is a problem of licensing and regulating an occupation. It is not a zoning case, but the zoning classifications in which plaintiffs' properties are located indicate the environment where plaintiffs' businesses are conducted. Plaintiff Wauwatosa Auto Salvage, Inc., is in a "Heavy

Commercial District," a zone which does not permit salvage and wrecking establishments, but its occupation there antedates the zoning ordinance and its continuation is permitted as a nonconforming use. The properties of the other two plaintiffs are in a "General Manufacturing" zone, and these salvage and wrecking occupations are permitted there. All such businesses are subject to reasonable licensing and regulating ordinances. *Lerner v. Delavan* (1930), 203 Wis. 32, 233 N. W. 608.

All of plaintiffs' properties are adjacent to railway lines. Two of them face on State Highway 100 which is an arterial carrying very heavy traffic. The area is primarily industrial. A near neighborhood zoned for residences contains a substantial number of homes and the neighborhood also contains a trailer park where people reside. Plaintiffs' businesses were here before the residence feature was built up. There is no evidence that residents have moved away because of the proximity of plaintiffs' operations.

In March of 1957, the city of West Allis created ordinance sec. 6.11 of the city code. This, with amendments added in April and July of that year, provides for licensing and regulating automobile salvage dealers. This power is given the city by sec. 62.11 (5), sec. 66.052, and sec. 175.25, Stats., which, among other things, state:

"66.052 OFFENSIVE INDUSTRY. (1) Any city council or village board may direct the location, management and construction of, and license (annually or otherwise), regulate or prohibit any industry, thing or place where any nauseous, offensive or unwholesome business may be carried on, within the city or village or within four miles of the boundaries, . . ."

"175.25 STORAGE OF JUNKED AUTOMOBILES. (1) No person, firm, partnership or corporation shall accumulate or store any junked automobiles or parts thereof outside of any building on any real estate located within the corporate limits of any city or village except upon a permit issued by the common council or village board."

"That sec. 62.11 confers power far beyond that conferred in the so-called general-welfare clause of the general charter as it stood prior to 1921 is plain, and a city operating under the general charter, finding no limitations in express language, has under the provisions of this chapter all the powers that the legislature could by any possibility confer upon it." *Hack v. Mineral Point* (1931), 203 Wis. 215, 219, 233 N. W. 82.

## I.

Among the regulations contained in the ordinance there appears:

"Sec. 6.11 (5) *Burning prohibited.* The burning of auto bodies, tires, upholstery, or any other parts of junked automobiles is prohibited."

The trial court stated in its decision that this is the most-serious objection to the ordinance and to which most of the proof at the trial was directed.

The trial court made its 32d, 33d, and 35th findings of fact thus:

"32. That to be able to sell the bodies, the bodies must be burned. The steel industry requires uncontaminated compressed auto-body bundles; and those that are contaminated are rejected; since nonferrous material in sheet steel results in a defective sheet.

"33. There are various methods of burning—as open, incinerator, flash, and oxyacetylene torching. The ordinance would prohibit all of these.

"35. That as to all of the plaintiffs, the sale of automobile bodies to the compressors is a substantial and material portion of the business; and without it the business could not survive."

It is established, then, that burning automobile bodies is an essential part of plaintiffs' salvage process. The bodies are burned out-of-doors. Witnesses acquainted with the neighborhood testified that burning of the auto bodies produces offensive and nauseous smells impairing their health and comfort. It is not surprising that rubber, varnishes, and

upholstery thus consumed produce the stenches of which the inhabitants of the area complain and to which they testify.

The police power of the state, exercised by municipalities under authority of the legislature, extends to the public safety, health, morals, and general welfare. *State ex rel. Carter v. Harper* (1923), 182 Wis. 148, 154, 196 N. W. 451. We quote:

"In this day none will dispute that government in the exercise of its police power may impose restrictions upon the use of property in the interest of public health, morals, and safety. That the same restrictions may be imposed upon the use of property in promotion of the public welfare, convenience, and general prosperity is perhaps not so well understood, but, nevertheless, is firmly established by the decisions of this and the federal supreme court. Thus in *Chicago, B. & Q. R. Co. v. Drainage Comm'rs, supra* [200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596], at page 592 it is said:
" 'We hold that the police power of a state embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals, or the public safety.' "

This court has often recognized the principle that the court will not interfere with the exercise of police power by a municipality unless the illegality of the exercise is clear. In *La Crosse Rendering Works v. La Crosse* (1939), 231 Wis. 438, 285 N. W. 393, we quoted at length from *Hadacheck v. Los Angeles* (1915), 239 U. S. 394, 36 Sup. Ct. 143, 60 L. Ed. 348. There a plaintiff had operated a brickyard for seven years without regulation. A recent ordinance affecting it would, plaintiff said, put him out of business. The municipality produced evidence that plaintiff's plant produced fumes, smoke, soot, and dust and from time to time caused sickness and discomfort to persons living in the vicinity. The supreme courts of California and the United States sustained the ordinance as a valid exercise of the police power. Quoting the latter court, in our *La Crosse Rendering Works* opinion, *supra,* we said (p. 448):

" 'It is to be remembered that we are dealing with one of the most essential powers of government, one that is the least limitable. It may, indeed, seem harsh in its exercise, usually is on some individual, but the imperative necessity for its existence precludes any limitation upon it when not exerted arbitrarily. A vested interest cannot be asserted against it because of conditions once obtaining. [Cases cited.]' "

In *State ex rel. Wisconsin Luth. H. S. Conference v. Sinar* (1954), 267 Wis. 91, 65 N. W. (2d) 43, and more recently in *State ex rel. Saveland P. H. Corp. v. Wieland* (1955), 269 Wis. 262, 69 N. W. (2d) 217, we have recognized that the police power safeguarding the "general welfare" is not limited to safety, health, and morals, but may embrace the public prosperity and convenience. As long ago as 1923 in *State ex rel. Carter v. Harper, supra,* we said (p. 159):

"It seems to us that aesthetic considerations are relative in their nature. With the passing of time, social standards conform to new ideals. As a race, our sensibilities are becoming more refined, and that which formerly did not offend cannot now be endured. That which the common law did not condemn as a nuisance is now frequently outlawed as such by the written law. This is not because the subject outlawed is of a different nature, but because our sensibilities have become more refined and our ideals more exacting. Nauseous smells have always come under the ban of the law, but ugly sights and discordant surroundings may be just as distressing to keener sensibilities. The rights of property should not be sacrificed to the pleasure of an ultra-aesthetic taste. But whether they should be permitted to plague the average or dominant human sensibilities, well may be pondered."

The city produced testimony that, in addition to stenches, burning the automobile bodies produced smoke and soot which adversely affected the neighborhood. The trial court concluded that the county smoke ordinance pre-empts and supersedes the city ordinance now in question. Sec. 59.07

(53), Stats., gives to a county of 500,000 population power to regulate by ordinance the discharge into the open air of smoke, gases, fumes, etc., and when an ordinance is enacted under this authority, such ordinance supersedes and nullifies any municipal ordinance as to such matters included in the county ordinance, and during the life of the county ordinance the municipality shall have no power to enact ordinances as to the subject matter included within such county ordinance.

Milwaukee county has a population of more than 500,000 and it has adopted sec. 88.11 (1) (a) of the county's general ordinance, which reads:

"(1) In General.
"(a) Ordinary Operation. No person shall cause, suffer, or allow to be emitted into the open air from any stack or chimney, fuel-burning equipment, internal-combustion engine, premises, open fire, or any other source, smoke the shade or density of which is equal to or greater than No. 2 of the Ringelman Chart, except that smoke the shade or density of which is equal to but does not exceed No. 2 of the Ringelman Chart may be emitted for a period or periods of not to exceed two minutes in any thirty-minute period and except when the firebox is being cleaned out or a new fire is being built therein, or when a breakdown of the equipment occurs such as to make it evident that the emission was not reasonably preventable."

By reason of the county ordinance and the pre-emption given it by sec. 59.07 (53), Stats., this city cannot regulate the shade or density of smoke nor can the city by ordinance enact ordinances as to the subject matter included within the county ordinance. The county could, if it chose, regulate the discharge of gases and fumes. It did not do so. It attacked only the quantity and quality of smoke. The trial court considers that the fumes, or odors, are incidental to the production of smoke and therefore are within the subject matter of the county ordinance on smoke, wherefore such incidents are reserved to the county.

We cannot agree. Both smoke and fumes are incidental to the burning of these materials but when the county ordinance attacks the one and omits the other we hold that they are not incidental to each other so as to include the omitted one, fumes, in the subject matter of the other, smoke, which is expressly regulated and, to a degree, prohibited. The county ordinance, obviously, embraced only smoke, its shade or density, without attempting to regulate other by-products of combustion, whereas those matters are attacked by the city ordinance. Except as to the declared purpose of the county ordinance,—regulation of density and shade of smoke,—the city ordinance is not rendered void or the field affecting fumes and odors pre-empted by the county ordinance as one which is included within the subject matter of the county ordinance.

It is an elementary rule of construction that an ordinance will be held constitutional unless the contrary is shown beyond a reasonable doubt and the ordinance is entitled to every presumption in favor of its validity. *Madison v. Chicago, M., St. P. & P. R. Co.* (1958), 2 Wis. (2d) 467, 87 N. W. (2d) 251. In *Dyer v. City Council of Beloit* (1947), 250 Wis. 613, 616, 27 N. W. (2d) 733, we said:

"Courts will not interfere with the exercise of police power by a municipal corporation in the absence of a clear abuse of discretion and unless it is manifestly unreasonable and oppressive, for it is not within the province of the courts, except in clear cases, to interfere with the exercise of this power reposed by law in municipal corporations. 11 Am. Jur., Constitutional Law, p. 1092, sec. 307. Municipal corporations are *prima facie* the sole judges respecting the necessity and reasonableness of ordinances under their police power, and every intendment is to be made in favor of the lawfulness and reasonableness of such ordinance. The city is presumed to have full knowledge of local conditions, and its adoption of an ·ordinance in the light of this knowledge creates a *prima facie* presumption that it is reasonable. 3 McQuillin, Mun. Corp. (2d ed.), p. 110, sec. 951."

The city also justifies its prohibition of burning auto bodies as the prevention of a fire hazard. Respondents contend that no disastrous, uncontrolled fires have occurred on their premises, the chief of the city fire department has not objected to their operations and he has not recommended the ordinance. Accordingly, they say, the ordinance is arbitrary and unreasonable. The city common council is not concluded by such facts. It appears in evidence that in the salvage operations the automobile bodies are burned, containing remnants of gasoline and oil, in close proximity to large stocks of combustible, unburned automobiles in an area well built up with industrial and residential structures. The city government may reasonably conclude that a potential fire hazard exists and in the furtherance of public safety the council may restrict these hazardous procedures.

We conclude that the prohibition of burning the auto bodies is a permissible exercise of the city's police power.

## II.

The trial court also declared subs. (2) (e) and (2) (g) of sec. 6.11 of the city ordinance are invalid and not separable from the remainder of the ordinance. These subsections are:

"(e) A plat of survey showing the boundary lines of the premises for which the license is sought, the location and outline of any buildings located thereon, the type of zoning, street, curb, and sidewalk lines, building setback lines, and the location and outline of any residences, apartments, stores, businesses or industries within 500 feet of the boundaries of the said premises."

"(g) The plat required under section (e) shall also disclose whether the applicant shall accumulate or store any junked automobiles or parts thereof outside of any building, the proposed quantity thereof and the proposed manner of storing same."

In its conclusions of law the learned trial court says that these requirements are arbitrary, unreasonable, and have no relation to public health, safety, morals, or general welfare. In its findings of fact, numbers 27, 28, and 29, the court found that the city might construe the ordinance to require plaintiffs to have an annual plat prepared at high cost by a licensed surveyor or engineer who would have to go upon every parcel to make measurements of land boundaries and building dimensions. Property owners might not permit this entry, thus making the plat incomplete and defective and preventing completion of the plaintiffs' applications for licenses from the city.

We think we have already sufficiently discussed the general principles, illustrated by precedents we have already cited. An ordinance is not to be construed unreasonably to demand unreasonable requirements if a reasonable construction may be given it which makes reasonable, rather than unreasonable, demands.

In the first place, an application for a permit to conduct a business which admittedly is subject to regulation may reasonably be required to give the licensing body information concerning the character of the neighborhood to be affected, including the congestion of buildings in that area. A plat showing such matters seems to us a very reasonable method of supplying such desirable information.

As to the cost, difficulty, and perhaps impossibility of plaintiffs procuring such a plat we are compelled to disagree with the learned trial court. The city engineer testified that his office contains all plats in the city, property divisions, and building locations. These are public records and presumably available to plaintiffs. The ordinance does not compel plats prepared for plaintiffs' applications by original survey but to a large extent may reasonably be satisfied by reproductions

from existing public records. Under a reasonable construction of the city ordinance, preparation of the plat will not fail by reason of property owners denying access to their premises.

Sub. (2) (g) of sec. 6.11 of the ordinance conforms to sec. 175.25 (3), Stats., which we treat in our next portion of the opinion.

We conclude that the requirement of such a plat with the application for a license is a valid incident of the licensing power itself. The ordinance is not void on this account.

## III.

Sec. 6.11 (6) (c) of the West Allis ordinance directs:

"On arterial highways, all salvage automobiles or parts thereof must be kept back at least 210 feet from the center line of said highway except where screened from the highway by a building on the licensed premises."

Two of the plaintiffs are located on arterial highways and, accordingly, are affected. Two hundred ten feet from the center line here is 150 feet from the property line.

The trial court found the provision to be invalid. The learned trial court's decision states:

"Thus, the reason or purpose of the 150 foot setback from the streetline here appears to rest primarily upon aesthetic grounds. While the city argues that the setback is to minimize vandalism, thefts, and the commission of other crimes, that is believed not to be sound, for such crimes can just as well, if not more so, be committed on the property so used beyond the setback line.

"The exercise of police power delegated to a municipal corporation cannot be invoked by it on purely aesthetic grounds. *City of Scottsbluff v. Winters Creek Canal Co.* 58 N. W. (2d) 543 (Neb. 1952). If the purpose is to get

the yard used away from the view of the traffic on the arterial highway, either by distance or by screening, the screening could be done by requiring a tree or shrubbery screen, perhaps, as well as a building; and, as in case of a building, that would not require a setback of 150 feet."

The municipality is the judge of the necessity and reasonableness of its ordinance under the police power and its ordinance creates a *prima facie* presumption that it is reasonable. *Dyer v. City Council · of Beloit, supra.* The learned trial court concluded that the ordinance's setback measures are not useful in minimizing criminal conduct and police problems, but we consider that problem is one for the city council within reason to solve, not for the court.

Sec. 175.25 (1), Stats., prohibits the out-of-doors accumulation or storage of junked automobiles or parts within a city or village except by permit. Sub. (2) prohibits such accumulation in townships within 750 feet of the center line of a state or federal highway, except upon permit. Sub. (3) declares that the permit shall specify the quantity and manner of storing such junk. We see no essential differences between sub. (3) of sec. 175.25 and sub. (2) (g) of sec. 6.11 of the ordinance, *supra,* and in view of provision sub. (2) prohibiting the storage in open country within 750 feet of such highways except as otherwise permitted by the local authorities, we regard the presumption of reasonableness of a setback of 210 feet in the present case is greatly strengthened.

In the matter of aesthetics, in *State ex rel. Saveland P. H. Corp. v. Wieland, supra,* we have declined to say that a police-power ordinance, in that case, zoning, may not be grounded on aesthetic considerations, alone,—as was foretold in *State ex rel. Carter v. Harper, supra,* from which we have already quoted. Even so, aesthetics here are not the sole ground. There are other very evident more-practical

reasons for setting the junk piles or the salvage operations back from the arterial, in the judgment of the city council in combating crime and hazards to traffic.

The trial court also concluded that the provision of the ordinance for screening the salvage operations from the highway is unreasonable and invalid and it does not provide for gates or other access to the premises. Indeed, such an interpretation of the council's requirements would be unreasonable if no access is permitted, but we do not think that interpretation is compulsory. We approach the screening requirement differently. The evils aimed at by the ordinance in its setback provisions, already referred to, are minimized when a building screens the operations from the public highway. No building is required, but certain advantages may be gained for the owner by the presence of such a building. We do not think the provision for setback is arbitrary or unreasonable because of a provision that an owner who has such a building or wants to construct one may avoid the prescribed setback line.

The three provisions of the ordinance,—burning, plat, and setback,—are the features for which the learned trial court condemned the ordinance. We have thought each of such provisions is valid, so we do not reach the question of their severability from the remainder of the ordinance.

The trial court did not say that all other parts of the ordinance are valid but he did not determine that any others are not, nor do respondents submit argument except as to these three. Therefore, we treat no other sections of the ordinance. We reverse the judgment of the learned trial court.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion. Appellant's request for costs in printing its brief in excess of 50 pages is granted.

The following opinion was filed June 26, 1959:

PER CURIAM (*on motion for rehearing*). Respondents' motion for rehearing points out that the county smoke ordinance, in sec. 88.11 (8), does attempt to regulate noxious gases and fumes, and our opinion overlooked that subsection. On re-examination we find this to be true. Therefore we must withdraw our statement that such county ordinance does not attempt to include within the subject matter anything except smoke. Such regulation (air pollution by noxious fumes) is thus pre-empted by the county ordinance, under the declaration of sec. 59.07 (53), Stats., if sec. 88.11 (8) of the county ordinance is valid. Appellant argues that it is invalid on constitutional grounds for lack of standards concerning the quantity and quality of pollution other than the density of smoke, discrimination between different smoke-producing industries which do not differ in their production of smoke, and other alleged constitutional defects in the county ordinance.

We do not determine the constitutional questions because the decision may be reached without doing so. The judgment of the city council concerning the fire hazard is sufficient to sustain the ordinance prohibiting the burning here of the junked automobiles, as determined at page 647 of the opinion.

We direct attention again to the power conferred upon city councils by sec. 66.052, Stats., to regulate, even to the extent of prohibiting, nauseous, offensive, or unwholesome industries, and refer again to the discussion in the opinion concerning the city's police power.

Quite apart from our error in stating that the county ordinance did not include in its subject matter fumes, odors, stenches, and the like, the city ordinance based on considerations other than smoke and smells, remains a valid exercise of the city's police power, as stated in the opinion.

Respondents now tell us that the trial court could have declared the city ordinance void for many reasons other than the ones that court relied on in its decision and presented to us in respondents' brief when the case was before us on appeal. Respondents urge that such questions should be examined now. Even if this were so, that would not require that we modify our mandate.

Motion for rehearing denied without costs.