COUNTRY MEADOWS WEST PARTNERSHIP, Plaintiff-
Respondent,

v.

VILLAGE OF GERMANTOWN, Defendant-Appellant.

Court of Appeals

*No. 99–1291. Submitted on briefs January 21, 2000.—Decided
May 3, 2000.*

## 2000 WI App 127

(Also reported in 614 N.W.2d 498.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Charles H. Bohl, Kathryn M. West* and *Elizabeth M. Estes* of *Whyte, Hirschboeck, Dudek, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Gary A. Ahrens* and *Sara*

*Purtell Scullen* of *Michael, Best & Friedrich, LLP* of Milwaukee.

Before Nettesheim, Anderson and Snyder, JJ.

¶ 1. SNYDER, J. The Village of Germantown appeals from a judgment and an order enjoining the Village from assessing impact fees on subdivision lots created by Country Meadows West Partnership (Country Meadows) and requiring the Village to refund fees Country Meadows paid as a condition for receiving building permits on those lots. The Village argues that the circuit court's ruling unlawfully impeded its municipal authority to assess impact fees upon developers pursuant to WIS. STAT. § 66.55 (1995–96)[1] and VILLAGE OF GERMANTOWN, WIS., CODE § 3.14 (1995) (the Village impact fee ordinance). Country Meadows responds that the Village's inherent power to assess impact fees is not the issue; rather, it contends that we should focus on the specific language and timing of the Village impact fee ordinance and determine whether the fees imposed by the Village contravened the parties' previously agreed-upon subdivision agreements. Country Meadows concludes that because the Village impact fee ordinance came into effect after Country Meadows had paid other impact fees under the parties' subdivision agreements and after the final plat had been approved, the Village is precluded from demanding additional fees.

¶ 2. The circuit court found Country Meadows's arguments compelling. We concur. The Village impact fee ordinance expressly requires payment of *all* impact fees prior to approval of the final plat. Because Country

---

[1] All references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted.

Meadows's final plat was approved before the enactment of the impact fee ordinance, it is not obligated to make disbursements under the ordinance. We also conclude that by requiring such payments as a condition of issuing building permits, the Village violated its subdivision agreements with Country Meadows. We therefore affirm the circuit court's decision.

## BACKGROUND

¶ 3. Country Meadows is the owner and developer of residential subdivisions located in Germantown known as Country Meadows West Subdivision (Country Meadows West) and Kostermans Garden Subdivision (Kostermans Garden). In 1993 and 1994, Country Meadows and the Village entered into two "Subdivision Development Agreement[s]." The agreements provided that in consideration of the Village's approval and adoption of final plats of land for subdivision development, Country Meadows would perform certain obligations. These obligations included paying fees for street sign installation, "wetland-floodplain mitigation," and engineering and inspection services provided by the Village. Country Meadows was also required to make improvements such as curbs, gutters, sidewalks, landscaping and storm water drainage facilities. The agreements became effective on December 17, 1993, as to Country Meadows West and on September 12, 1994, as to Kostermans Garden. The language of each agreement was virtually the same.

¶ 4. At the time the agreements were made, the law governing the approval of plats in Germantown was WIS. STAT. § 236.13 (1991–92) and ch. 18 of the Village Code. Section 236.13 provides that as a condition of plat approval, a municipality may require that the subdivider "make and install any public improve-

ments reasonably necessary" and that the acceptance of "the dedication of public streets, alleys or other ways" may be conditioned upon the construction of "designated facilities" including "sewerage, water mains and laterals, grading and improvement of streets, alleys, sidewalks and other public ways, street lighting or other facilities . . .". Section 236.13(2)(a), (b).

¶ 5. Village Code ch. 18, entitled "Subdivision and Platting," was adopted by the Village pursuant to WIS. STAT. § 236.45. Chapter 18 provides that certification of a final subdivision plat is contingent upon completion of certain improvements. Consistent with WIS. STAT. ch. 236 and Village Code ch. 18, the subdivision agreements held Country Meadows responsible for the improvements and fees mentioned above.[2]

¶ 6. On April 14, 1994, the State enacted WIS. STAT. § 66.55, granting municipalities the right to assess "impact fees" on developers for the purpose of providing further public improvements and facilities, such as parks, libraries, storm and sewage treatment systems, fire and police protection facilities, and emergency medical facilities. *See* 1993 Wis. Act 305. Imposition of § 66.55 impact fees was not to begin until May 1, 1995. *See* § 66.55(2)(c). Pursuant to § 66.55, the Village created Village Code § 3.14, effective July 27, 1995. The ordinance accordingly imposed impact fees upon developers for water, park, library, and fire and police protection facilities. *See* § 3.14(2).

¶ 7. After the Village adopted its impact fee ordinance, Country Meadows applied for building permits for lots in Country Meadows West and Kostermans Garden. In response, the Village imposed impact fees of

---

[2] In *Jordan v. Village of Menomonee Falls*, 28 Wis. 2d 608, 615, 137 N.W.2d 442 (1965), the court authorized the payment of a fee in lieu of land dedication.

$1094.15 and $1373.82[3] on Country Meadows's lots on September 14, 1995, and on subsequent dates. Thirteen lots were assessed for a total of $14,223.95, and Country Meadows paid the fees.

¶ 8. In June 1996, Country Meadows brought suit against the Village, alleging that it had breached their subdivision agreements by requiring payment of impact fees above and beyond those fees agreed to under the contracts.[4]

¶ 9. In February 1997, the Village filed a motion for summary judgment seeking dismissal of Country Meadows's action. The Village contended that Country Meadows's claims should be dismissed because the Village could not contract away its police powers enabling it to impose impact fees on a developer. Country Meadows replied with its own motion for summary judgment asserting that the assessment of impact fees under the Village's impact fee ordinance contravened the parties' subdivision agreements.

---

[3] Impact fees of $1373.82 included a village hall fee of $279.67. After Country Meadows paid the fees, however, the Village refunded the village hall fee amount. Fees for each lot, therefore, were $1094.15.

[4] Country Meadows also brought causes of action claiming "unlawful assessment of impact fees" for the village hall and area school sites. These allegations are not before this court.

We also note that on April 21, 1997, Country Meadows filed a subsequent complaint against the Village, restating its causes of action and adding that it had filed an appeal to the Village Board and that the Village had violated a municipal ordinance. Country Meadows's second complaint was apparently filed in response to the Village's claim that Country Meadows had failed to pursue its claims in an administrative proceeding before commencing its circuit court action. The two complaints were later consolidated pursuant to WIS. STAT. § 805.05 (1997–98).

¶ 10. In ruling on the parties' motions, the circuit court concluded that the Village's police powers did not "override the contractual obligations since these powers were exercised after the contracts were signed." The court granted summary judgment in favor of Country Meadows, enjoining the Village from assessing impact fees on any lot in Country Meadows West or Kostermans Garden and authorizing recovery of $16,305.94 for Country Meadows's payment of impact fees plus statutory interest and costs. The Village now appeals.

## DISCUSSION

¶ 11. We review a summary judgment de novo, using the same standards and methodology applied by the circuit court. *See Waukesha State Bank v. Village of Wales*, 188 Wis. 2d 374, 380, 525 N.W.2d 110 (Ct. App. 1994). Summary judgment must be granted in favor of the moving party when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Grams v. Boss*, 97 Wis. 2d 332, 338–39, 294 N.W.2d 473 (1980); WIS. STAT. § 802.08(2) (1997–98). The parties agree that there is no issue of material fact.

¶ 12. The Village contends on appeal that Country Meadows's breach of contract claim should be dismissed because the Village had the authority under WIS. STAT. § 66.55 and Village Code § 3.14 to assess impact fees on Country Meadows's development of Country Meadows West and Kostermans Garden. The Village points out at length that the state has entrusted local governments to exercise their police powers to attend to the public health, safety and general welfare of the community, *see LaCrosse Rendering*

*Works, Inc. v. City of LaCrosse*, 231 Wis. 438, 450, 285 N.W. 393 (1939), and that a municipality cannot contract away its police powers, *see Northern Pacific Railway Co. v. Minnesota ex rel. Duluth*, 208 U.S. 583, 596 (1908).

¶ 13. Country Meadows responds that the issue here is not whether the Village has the inherent power to assess impact fees. The issue is whether the Village may demand impact fees in excess of those required under subdivision agreements approving residential subdivision plats where the subsequent fees are a condition for issuing building permits for lots in the subdivision and where such fees were assessed pursuant to law that was not effective at the time the subdivision agreements were made or when the plats were approved or recorded. Country Meadows concludes that the Village impact fee ordinance should not be applied retroactively.

¶ 14. We agree with Country Meadows that this case is not about whether the Village has the inherent power to enact impact fee legislation. Clearly it does. However, we are also not convinced that the impact fee legislation is inapplicable solely because it has been applied retroactively. While timing is critical to this case, what controls are the terms of the ordinance requiring payment of all impact fees prior to the final plat approval and not the general applicability of an ordinance enacted after the parties' subdivision agreements.

¶ 15. Our analysis begins with the plain language of the statute. WISCONSIN STAT. § 66.55, which is broadly titled "Impact fees," provides that "[a] political subdivision may enact an ordinance under this section that imposes impact fees on developers to pay for the capital costs that are necessary to accommodate land

development." Section 66.55(2)(a). "Impact fees" means "cash contributions, contributions of land or interests in land or any other items of value that are imposed on a developer by a political subdivision under this section." Section 66.55(1)(c). "Land development" is defined as "the construction or modification of improvements to real property that creates additional residential dwelling units within a political subdivision." Section 66.55(1)(d).

¶ 16. Village Code § 3.14, labeled "*TAX IMPACT FEES*," adopts the definitions found in WIS. STAT. § 66.55(1). *See* § 3.14(1). Section 3.14(2) states:

> IMPOSED. Pursuant to § 66.55, Wis. Stats., impact fees are hereby imposed on developers as follows:
>
> (a) Facilities for pumping, storing and distributing water — $428.87 per residential unit equivalent for residential, commercial, industrial and institutional development.
>
> (b) Park, playgrounds and other recreational facilities — $613.32 per residential unit.
>
> (c) Fire protection facilities — $215.42 per residential unit and $0.998036/$1,000 of building costs of commercial, industrial and institutional development.
>
> (d) Police protection facilities — $190.49 per residential unit and $0.49725/$1,000 of building costs of commercial, industrial and institutional development.
>
> (e) Library facilities — $259.37 per residential unit.

Next, subsec. (3) provides the following:

> PAYMENT OF IMPACT FEES. The developer of a subdivision or minor subdivision (CSM)[5] shall pay

---

[5] CSM stands for "certified survey map."

all impact fees prior to final plat approval or approval of the CSM, respectfully, based upon the maximum number of residential units permitted. In the case of planned unit development, a commercial or industrial subdivision, or any other development not involving a land division, the impact fee shall be paid at the time of applying for a building permit.

Section 3.14(3).

¶ 17. The interpretation of a statute or ordinance is a question of law and is subject to our de novo review. *See Hemerley v. American Family Mut. Ins. Co.*, 127 Wis. 2d 304, 307, 379 N.W.2d 860 (Ct. App. 1985). The purpose of interpreting a statute is to determine legislative intent. *See Northwest Properties v. Outagamie County*, 223 Wis. 2d 483, 488, 589 N.W.2d 683 (Ct. App. 1998), *review denied*, 224 Wis. 2d 265, 590 N.W.2d 490 (Wis. Feb. 25, 1999) (No. 97–3653). In doing so, we look to the plain language of the statute. *See id.* If the statute is clear on its face, our inquiry into the legislature's intent terminates and we must simply apply the statute to the facts of the case. *See id.* Further, we read statutes in context such that the entire section of a statute and related sections are to be considered in its interpretation. *See Waukesha State Bank*, 188 Wis. 2d at 382. We are satisfied, and the parties do not dispute, that the language in the statute and the Village ordinance is clear.

¶ 18. As noted above, the second of the parties' two subdivision agreements was executed on September 12, 1994, nearly a year before the Village created its impact fee ordinance on July 27, 1995. While the Village contends that Village Code § 3.14(3) permits it to demand impact fees at the time a subdivision devel-

oper requests a building permit, we must reject this reading as contrary to the terms of the ordinance.

¶ 19. The first sentence of Village Code § 3.14(3) specifies when a subdivision developer is to pay its impact fees: "The developer of a subdivision or minor subdivision (CSM) shall pay *all* impact fees prior to *final plat approval* or approval of the CSM, respectfully, based upon the maximum number of residential units permitted." (Emphasis added.) In this case, Country Meadows paid impact fees prior to final plat approval for such things as street sign installation, "wetland-floodplain mitigation," and engineering and inspection services as set forth under the subdivision agreements and consistent with Village Code ch. 18. Because Country Meadows's final plat was approved before § 3.14(3) became effective, the ordinance by its own terms does not apply. Moreover, since *all* impact fees were to be paid prior to final approval of the plat, the Village cannot now demand additional impact fees at the time Country Meadows applies for a building permit.

¶ 20. We next consider the second sentence in Village Code § 3.14(3), which the Village argues permits its collection of impact fees from Country Meadows. The second sentence addresses the payment of impact fees where subdivision development is not involved. "In the case of planned unit development, a commercial or industrial subdivision, or *any other development not involving a land division*, the impact fee shall be paid at the time of applying for a building permit." *Id.* (emphasis added). Here, Country Meadows is a subdivision developer and as such its residential development necessarily involves land division, which is addressed by the first sentence. The second sentence of § 3.14(3), therefore, is not triggered.

¶ 21. Thus, because Country Meadows obtained its final subdivision plat approval prior to the effective date of Village Code § 3.14(3), its development of Country Meadows West and Kostermans Garden is free from the Village's impact fee ordinance. If we were to conclude otherwise, we would permit the Village to subvert the ordinance and impose impact fees upon a subdivision developer at either the final plat approval stage or the building permit stage, or conceivably at both. This result runs contrary to the clear language of the ordinance which declares that *all* impact fees imposed on subdividers will be paid prior to final plat approval. If the Village could ignore the language of the first sentence and demand payment from a subdivider under the second sentence when the subdivider seeks a building permit, such a policy would permit the Village to collect impact fees from the subdivider at both the final plat approval stage and the building permit application stage. Because the ordinance does not otherwise authorize double fees for subdividers, we reject this reading of the ordinance.

¶ 22. We are additionally persuaded, as was the circuit court, that the Village's assessment of impact fees under Village Code § 3.14 violated the parties' subdivision agreements. Under the agreements, the Village approved and adopted Country Meadows's final plats for Country Meadows West and Kostermans Garden in consideration for certain fees and improvements. None of the fees set forth in the agreements, however, included fees for parks, libraries, storm and sewage treatment systems, fire and police protection facilities, and emergency medical facilities. By assessing these subsequent impact fees, the Village exceeded the scope of the parties' agreement.

301

¶ 23. The Village also imposed its new impact fee conditions upon Country Meadows's application for a building permit where no such conditions were contemplated by the subdivision agreements. According to the agreements,

> No permit for the construction of a building within the Development shall be issued by the Village until the Master Site Grading Plan, the sanitary sewer, watermain, and storm sewer system plans are approved by the Village Engineer and as-builts of the sanitary, storm and water are approved by the Village Engineer.

This is the only language in the subdivision agreements addressing the developer's building permit. By imposing subsequent impact fees as a condition for issuing a building permit, the Village further violated its agreements with Country Meadows.

¶ 24. Apart from its police powers argument, the Village offers public policy grounds in support of its position. The Village claims that the circuit court's decision "could likely result in Germantown reimbursing approximately $200,000.00 in impact fees" to Country Meadows and other developers who have paid impact fees for new development. The Village also argues that the court's decision limits the Village's ability to collect public revenue because it would be foreclosed from obtaining any further impact fees under the new impact fee ordinance where a final plat approval has previously been agreed upon under WIS. STAT. ch. 236 and Village Code ch. 18.

¶ 25. The Village's policy concerns may very well be legitimate, but we are unwilling to rewrite its clearly drafted legislation in order to remedy a result it did not desire or failed to anticipate. *See State v. J.F.F.*,

164 Wis. 2d 10, 15–16, 473 N.W.2d 546 (Ct. App. 1991). Such policy arguments should be addressed by the legislature, not by this court. *See State v. Isaac J.R.*, 220 Wis. 2d 251, 259, 582 N.W.2d 476 (Ct. App. 1998); *Michael T. v. Briggs*, 204 Wis. 2d 401, 410, 555 N.W.2d 651 (Ct. App. 1996).

¶ 26. In sum, we affirm the circuit court's judgment and order enjoining the Village from assessing any impact fees on any lot in Country Meadows West or Kostermans Garden subject to this litigation and awarding Country Meadows $16,305.94 plus statutory interest and costs.[6]

*By the Court.*—Judgment and order affirmed.

---

[6] We note that the Village also relies upon case law addressing when a vested interest in property can be asserted in the face of governmental legislation. *See LaCrosse Rendering Works, Inc. v. City of LaCrosse*, 231 Wis. 438, 448, 285 N.W. 393 (1939). While we acknowledge that a whole body of law exists concerning a developer's vested rights and the sovereign power of municipalities, *see, e.g., Lake Bluff Housing Partners v. City of South Milwaukee*, 197 Wis. 2d 157, 540 N.W.2d 189 (1995), Country Meadows makes no vested rights claim and we see no need to address such a claim here.