CITY OF MADISON, Plaintiff-Respondent,

v.

Adelle SCHULTZ, d/b/a Geisha House, Defendant-Appellant.

Court of Appeals

*No. 79–689. Submitted on briefs November 2, 1979.—
Decided July 24, 1980.*
(Also reported in 295 N.W.2d 798.)

190

For the defendant-appellant the cause was submitted on the brief of *Koritzinsky, Neider, Langer & Roberson* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Henry A. Gempeler,* city attorney, and *Larry W. O'Brien,* assistant city attorney.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

DYKMAN, J.   The defendant, Adelle Schultz, d/b/a Geisha House, was convicted in the Dane County Circuit Court of four counts of violating portions of sec. 9.33, Madison General Ordinances, entitled "Regulation of Massage Establishments, Massage Technicians and Employees." The conviction resulted from a July 30, 1975 visit to her place of business by a Madison police agent.

The defendant was charged with owning, operating or managing massage establishments; employing unlicensed massage technicians; knowingly allowing the technicians to give genital massages; and permitting them to expose their sexual or genital parts to another person. These activities were forbidden by sec. 9.33, Madison General Ordinances, adopted by the Madison City Council on January 28, 1975, for the purpose of regulating massage establishments. [1]

---

[1] The pertinent sections of sec. 9.33, Madison General Ordinances, provide:

(3) *Massage Establishment License.*

(a) No person, corporation, or other legal entity shall suffer, cause or permit the conduct of a massage establishment without having first obtained a license therefor from the Common Council. A separate license shall be acquired for each such establishment.

. . . .

(6) *Regulations of Operations and Licenses.*

(a) Each establishment shall at all times maintain and comply with the following regulations:

According to the police agent's report, he paid $45 for a body massage which included "penis stimulation" from a completely nude attendant at the defendant's establishment. The session lasted approximately one hour. The basic facts were stipulated by the parties to the trial court.

On appeal, the defendant contends that:

(1) Section 9.33, Madison General Ordinances, is a constitutionally invalid exercise of the city's police power because the regulation of sexual conduct is primarily of statewide concern;

(2) Section 9.33, Madison General Ordinances, is constitutionally invalid because the state legislature has preempted the field of the regulation of sexual conduct;

(3) Section 9.33, Madison General Ordinances, or several of its provisions, violates the first, fourth, fifth and fourteenth amendments to the United States Constitution.

1. *General Regulations:*

. . . .

d. Only massage technicians licensed pursuant to this section shall be employed as massage technicians by the establishment;

(b) Each technician shall at all times comply with the following regulations:

. . . .

5. a. It shall be unlawful for any person, in a massage establishment, to place his or her hand or hands upon, to touch with any part of his or her body, to fondle in any manner, or to massage, a sexual or genital part of any other person.

b. It shall be unlawful for any person, in a massage establishment, to expose his or her sexual or genital parts, or any portion thereof, to any other person.

. . . .

d. It shall be unlawful for any person owning, operating or managing a massage establishment, knowingly to cause, allow or permit in or about such massage establishment, any agent, employee, or any other person under his control or supervision to perform such acts prohibited in Subparagraphs a, b or c of this section.

We reject these contentions and affirm the trial court's decision.

## Conflict Between State and Local Law

The defendant first attacks sec. 9.33, Madison General Ordinances, by claiming that the City of Madison (city) had no authority to legislate in the area of criminal sexual conduct because this area is primarily a matter of statewide concern. She claims that sec. 62.11(5), Stats., provides authority to legislate only in matters of local concern. Thus, she suggests a two-step analysis to determine the validity of any municipal enactment which entails finding first, whether the concern is primarily local or statewide and second, whether state legislation has preempted it. The defendant claims that legislation, such as sec. 9.33, Madison General Ordinances, prohibiting commercial sexual activity is primarily of statewide concern and that the state has enacted preemptive legislation on the subject. She argues that sec. 9.33 is accordingly invalid.

Municipalities in Wisconsin have no inherent powers. *Van Gilder v. City of Madison*, 222 Wis. 58, 85, 268 N.W. 108, 109 (1936). They are authorized, however, to regulate local affairs by the Wisconsin Constitution and by sec. 62.11(5), Stats.

Article XI, sec. 3 of the Wisconsin Constitution, known as the "Home Rule Amendment," provides in pertinent part:

Cities and villages organized pursuant to state law are hereby empowered, to determine their local affairs and government, subject only to this constitution and to such enactments of the legislature of state-wide concern as shall with uniformity affect every city or every village.

The method of such determination shall be prescribed by the legislature.

Section 62.11(5), Stats., provides:

*Except as elsewhere in the statutes specifically provided,* the council shall have the management and control of the city property, finances, highways, navigable waters, and the public service, and shall have power to act for the government and good order of the city, for its commercial benefit, and for the health, safety, and welfare of the public, and may carry out its powers by license, regulation, suppression, borrowing of money, tax levy, appropriation, fine, imprisonment, confiscation, and other necessary or convenient means. *The powers hereby conferred shall be in addition to all other grants, and shall be limited only by express language.* (Emphasis added.)

The city's power to regulate sexual activity occurring in massage parlors does not derive from its constitutional grant of local power. This empowers cities to act only *in areas of paramount local concern* and where no legislative enactment of statewide concern and uniform application exists. *See Muench v. Public Service Comm.,* 261 Wis. 492, 53 N.W.2d 514 *on reh.* 261 Wis. 515c, 515j, 55 N.W.2d 40, 45 (1952) ; Comment, *Conflicts Between State Statute and Local Ordinance in Wisconsin,* 1975 Wis. L. Rev. 840, 845; *City of Plymouth v. Elsner,* 28 Wis.2d 102, 106, 135 N.W.2d 799 (1965).

We hold that the regulation of massage parlors and the prohibition of commercial masturbation are primarily or paramountly areas of statewide concern. Whether a matter is one of paramount state or local concern is a judicial question. *State ex rel. Michalek v. LeGrand,* 77 Wis.2d 520, 253 N.W.2d 505 (1977).

The Madison ordinance is aimed at the suppression of commercial masturbation. Commercial sex has long been an activity banned by Wisconsin criminal law dealing

with prostitution. The present sec. 944.30, Stats., which prohibits prostitution, dates back to 1849. Ch. 139, secs. 9 and 10, Rev. Stats. (1849). Section 944.30 was amended in 1977 to define the offense of prostitution in sub. (4) to cover one who "[m]asturbates a person or offers to masturbate a person . . . for any thing of value." Sec. 102, ch. 173, Laws of 1977.[2] While this amendment came after the 1975 enactment of sec. 9.33, Madison General Ordinances, the ordinance nonetheless deals with criminal-like activity and "the suppression of crime" is a matter "of statewide concern." *Van Gilder*, 222 Wis. at 76, 267 N.W. at 32.

■

The other provisions of the ordinance which defendant violated regulate the management and licensing of massage parlors. These, too, do not deal with matters primarily of local concern, although we recognize that they reflect a mixture of state and local concerns. They fall into that "mixed bag" of local enactments, which the supreme court in *Michalek*, 77 Wis.2d at 527, 253 N.W.2d at 507, described as "of 'state-wide concern,' affecting the people and state at large somewhat remotely and indirectly, yet at the same time affect[ing] the individual municipalities directly and intimately."

The city has an interest in the social, moral and economic climate of its community. Many citizens find com-

---

[2] Section 944.30, Stats., was again amended by sec. 843qc, ch. 221, Laws of 1979, which added a fifth definition of prostitution:

Commits or offers to commit or requests to commit an act of sexual contact for anything of value.

Section 939.22(34), Stats., now reads:

"Sexual contact" means the intentional touching of the clothed or unclothed intimate parts of another person with any part of the body clothed or unclothed or with any object or device, or the intentional touching of any part of the body clothed or unclothed of another person with the intimate parts of the body clothed or unclothed if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification. Sec. 842q, ch. 221, Laws of 1979.

mercial sex morally and socially repugnant and potentially detrimental to the economic well-being of certain areas of the city. The citizens of Madison have obviously identified massage parlors in the city as a local problem.

On the other hand, we conclude that the subject matter of this entire regulation places it primarily in the realm of state concern. Because of the connection between various types of criminal activity, separate from the crime of prostitution[3] but commonly an offshoot of commercial sex, local and state law enforcement officials have an interest in massage parlor legislation. Furthermore, *society's* basic moral values are demeaned by commercial sexual activity. The state has an overriding interest in the preservation of society's basic values. *See* Sandalow, *The Limits of Municipal Power Under Home Rule: A Role for the Courts,* 48 Minn. L. Rev. 643, 708–22 (1964).

Because the regulation of commercial sexual activity is of paramount state concern, the city's power to adopt sec. 9.33, Madison General Ordinances, must come from a source other than art. XI, sec. 3, Wisconsin Constitution. We find that source in sec. 62.11(5), Stats. This section does not mean, as the defendant insists, that a municipality may not legislate in matters primarily of statewide concern. The Wisconsin Supreme Court has said in *Wis. Environmental Decade, Inc. v. DNR,* 85 Wis. 2d 518, 533, 271 N.W.2d 69, 76 (1978), that sec. 62.11(5) "would be a nullity if it were construed to confer on municipalities only that authority which related to 'local affairs' since that power is already constitutionally guaranteed by the home rule amendment."

---

[3] As that crime was defined prior to the enactment of sec. 102, ch. 173, Laws of 1977.

██ The city may regulate in the area of public morals because this lies within the general police powers of the state which the legislature could confer upon the city. *Hack v. City of Mineral Point*, 203 Wis. 215, 219, 233 N.W. 82 (1931); *Highway 100 Auto Wreckers, Inc. v. City of West Allis*, 6 Wis.2d 637, 643, 96 N.W.2d 85 (1959).

That sec. 62.11 confers power far beyond that conferred in the so-called general welfare clause of the general charter as it stood prior to 1921 is plain, and a city operating under the general charter, finding no limitations in express language, has under the provisions of this chapter all the powers that the legislature could by any possibility confer upon it. *Hack*, 203 Wis. at 219, 233 N.W. at 84.

In *Wis. Environmental Decade, Inc.*, 85 Wis.2d 518, the Wisconsin Supreme Court approved the rule for testing the validity of a municipal ordinance enacted under sec. 62.11(5), Stats., suggested by Comment, *Conflicts Between State Statutes and Local Ordinances in Wisconsin*, 1975 Wis. L. Rev. at 848:

2. If a municipality acts within the legislative grant of power but not within the constitutional initiative, the state may withdraw the power to act; so if there is logically conflicting legislation, or an express withdrawal of power, the local ordinance falls. Furthermore, if the state legislation does not logically conflict, or does not expressly withdraw power, it is possible that the local ordinance nevertheless must fall if an intent that such an ordinance not be made can be inferred from the fact that it defeats the purpose or goes against the spirit of the state legislation. Also, it is possible that a municipality may be acting within the legislative grant of power but that the ordinance must fall because the legislature did not have the authority to confer such power on a municipality.

The Wisconsin Supreme Court relied upon this analysis in *Wis. Assoc. of Food Dealers v. City of Madison*, 97

Wis.2d 426, 293 N.W.2d 540 (1980), in reviewing the validity of a Madison ordinance requiring city retail milk sellers to offer for sale milk in returnable containers in "sufficient quantities," along with nonreturnable containers. The court discussed the ordinance upon review of the denial of a temporary injunction sought by the ordinance's challengers. The court concluded that the ordinance would be upheld unless the trial court found that the legislature had expressly restricted, revoked, or withdrawn the city's power to enact the ordinance, or that state legislation was logically inconsistent with the existence of the power in the city, or that the ordinance infringed the spirit of state law or the general policy of the state.[4] *See also State v. Village of Lake Delton,* 93 Wis.2d 78, 286 N.W.2d 622 (Ct. App. 1979).

We find that none of the invalidating factors set forth in *Wis. Environmental Decade,* 85 Wis.2d 518, exist in this case. The legislature has not enacted logically conflicting legislation. Chapter 944 embodies state legisla-

---

[4] The court in *Wis. Assoc. of Food Dealers,* 97 Wis.2d 426, held that the trial judge in that case had failed to make a specific finding as to whether the ordinance infringed the spirit of state law or the general policy of the state. Failure to make that finding was held to be an abuse of the trial judge's discretion. The case was accordingly remanded to the trial court so that complete findings could be made.

The abuse of discretion test was applied in *Wis. Assoc. of Food Dealers* because the trial court had made a factual determination as to whether the plaintiffs had a reasonable probability of success on the merits of their action. We are faced solely with stipulated facts and questions of law. We therefore do not need to consider whether the trial court made all of the findings required by *Wis. Assoc. of Food Dealers.* "When the principal facts in a case are undisputed and the controversy centers on what has been called ultimate conclusions of fact, or conclusions of law, this court . . . will not be bound by the findings of the trial court." *Chicago, M., St. P. & P. R.R. Co. v. Milwaukee,* 47 Wis.2d 88, 176 N.W.2d 580, 583 (1970).

tion which defines "Crimes against Sexual Morality." As noted, ch. 944 has been amended since the enactment of the Madison ordinance and the alleged violation to proscribe commercial masturbation in sec. 944.30 (4), Stats., and amended again to define further acts as prostitution. The massage parlor ordinance which proscribes the same activity can hardly be said to be inconsistent with state statutes.

The fact that the state has enacted comprehensive legislation governing sexual morality does not mean that municipalities cannot adopt ordinances in the same area which go farther in prohibition. In *Fox v. Racine,* 225 Wis. 542, 275 N.W. 513 (1937), the supreme court upheld a city ordinance which unconditionally prohibited certain endurance tests which allegedly conflicted with sec. 352.-18 (1), Stats. (1935). The statute prohibited these tests unless certain conditions were met. The court said:

The statute, as well as the ordinance, in the case at bar, is prohibitory, and the difference between them is only that the ordinance goes farther in its prohibition,— but not counter to the prohibition under the statute. The city does not attempt to authorize by this ordinance what the legislature has forbidden; nor does it forbid what the legislature has expressly licensed, authorized, or required. Under those circumstances there is nothing contradictory between the provisions of the statute and of the ordinance because of which they cannot coexist and be effective. *Unless legislative provisions are contradictory in the sense that they cannot coexist, they are not to be deemed inconsistent because of mere lack of uniformity in detail. Bodkin v. State* (Neb.), 272 N.W. 547; *City of Mobile v. Collins,* 24 Ala. App. 41, 130 So. 369. Consequently, there is no conflict or inconsistency between the statute and the ordinance in question because of which the latter has been superseded by the statute, and therefore, rendered invalid and ineffective. (Emphasis added.) *Fox,* 225 Wis. at 546–47, 275 N.W. at 515.

See also *City of Milwaukee v. Piscuine,* 18 Wis.2d 599, 119 N.W.2d 442 (1963); *La Crosse Rendering Works v. La Crosse,* 231 Wis. 438, 457, 285 N.W. 393, 402 (1939); *City of Janesville v. Garthwaite,* 83 Wis.2d 866, 266 N.W.2d 418 (1978); *Caeredes v. City of Platteville,* 213 Wis. 344, 350, 251 N.W. 245 (1933).

The Madison massage parlor ordinance and ch. 944, Stats., can effectively coexist. The ordinance goes farther than ch. 944 in the regulation of commercial sexual conduct but only extends and does not contradict the policies underlying the criminal code's provisions.

We find no express legislative withdrawal of power from the city in this area. To the contrary, the legislature has specifically allowed city councils to prohibit conduct similar to that prohibited by state criminal statutes. Section 66.051(4), Stats., provides:

Nothing in this section shall be construed to preclude cities and villages from prohibiting conduct which is the same or similar to that prohibited by chs. 941 to 947.

Thus, the city could prohibit commercial sexual conduct similar to that prohibited in ch. 944. The activity in massage parlors at which the ordinance is directed is clearly such conduct.

Finally, we do not ascertain anything in this ordinance which would defeat the purpose or spirit of state legislation dealing with commercial sexual conduct. Accordingly, the local ordinance is a proper exercise of the city's broad police powers. We need not determine the wisdom of the city's action as "[t]he municipality is the judge of the necessity and reasonableness of its ordinance under the police power and its ordinance creates a *prima facie* presumption that it is reasonable." *Highway 100 Auto Wreckers,* 6 Wis.2d at 650, 96 N.W.2d at 92.

## Constitutional Claims

The defendant next claims that sec. 9.33, Madison General Ordinances, violates rights guaranteed to her by the first, fourth, fifth and fourteenth amendments to the United States Constitution. We find the defendant's claims meritless for the following reasons:

(1) *First Amendment Protection of Speech and Expression*

The defendant argues that sec. 9.33 (6) (b) 5.b. and c., Madison General Ordinances, which prohibit the exposure of the sexual or genital parts of either a masseuse or patron, violate the defendant's rights to full communication and expression guaranteed by the first amendment. Her argument is based upon the assumption that nudity inherently constitutes speech or symbolic conduct which the first amendment is deemed to protect. We question whether a masseuse's actions in disrobing at the behest of a paying patron can be considered a form of speech or communication protected by the constitution.

We agree with the United States Supreme Court's statement in *United States v. O'Brien*, 391 U.S. 367, 376 (1968), that "[w]e cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." The only idea expressed by the masseuse was her willingness to take her clothes off to enhance the sexual experience of the paying patron. The defendant asserts no aesthetic or noncommercial interest in "the communication of this idea."

A masseuse's actions in disrobing do not constitute "speech" which the first amendment protects. We agree with other courts which have found "no communicative characteristics of any substance which would bring massage parlors within the ambit of the first amendment's

free speech clause." *Bayside Enterprises, Inc. v. Carson,* 450 F. Supp. 696, 710 (M.D. Fla. 1978). *See also J.B.K., Inc. v. Caron,* 600 F.2d 710 (8th Cir. 1979), *cert. den.* 444 U.S. 1016 (1980). Accordingly, the defendant can claim no protection under the first amendment for her actions.

(2) *The Right to Privacy*

The defendant next claims that her constitutionally guaranteed right to privacy under the fourth amendment is violated by sec. 9.33(6)(b)5.a., Madison General Ordinances, which prohibits the touching of another person's sexual or genital parts, and by sec. 9.33(6)(a)1.j., which requires massage establishments to permit inspections by law enforcement and other public officials.

We find no violation of the defendant's constitutional right of privacy which derives from certain "penumbras" stemming from the first, fourth, fifth, ninth and fourteenth amendments to the United States Constitution. *Roe v. Wade,* 410 U.S. 113 (1973) ; *Griswald v. Connecticut,* 381 U.S. 479 (1965). We draw a distinction between private, noncommercial sexual activity which may be protected by the constitution, and the commercial sexual activity proscribed by the Madison massage parlor ordinance.

Numerous courts have rejected right to privacy claims which are based on the premise that *all* sexual acts performed by consenting adults in nonpublic places are protected. In reviewing constitutional challenges to the Missouri prostitution statute brought by massage parlor operators, *J.B.K., Inc. v. Caron,* 600 F.2d at 711, found that the right to privacy does not extend to "all sexual practices performed in private including the commercialized sexual activities regulated in this case." It relied on *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 65 (1973), where the United States Supreme Court said:

■

Our prior decisions recognizing a right to privacy guaranteed by the Fourteenth Amendment included "only personal rights that can be deemed 'fundamental' or 'implicit in the concept of ordered liberty.'" . . . This privacy right encompasses and protects the personal intimacies of the home, the family, marriage, motherhood, procreation, and child rearing. (Citations omitted.)

Since commercial sex involves none of those "fundamental" privacy considerations enumerated in *Paris Adult Theatre I,* it deserves no protection upon the basis of a constitutional right of privacy. *See also Caesar's Health Club v. St. Louis City,* 565 S.W.2d 783 (Mo. App.), *cert. den.,* 439 U.S. 955 (1978); *State v. Price,* 237 N.W.2d 813 (Iowa), *appeal dismissed,* 426 U.S. 916 (1976); *Brown v. Haner,* 410 F. Supp. 399 (W.D. Va. 1976); *State v. Hicks,* 360 A.2d 150 (Del. Super. Ct. 1976), *aff'd per curiam,* 373 A.2d 205 (Del. 1977); *Brown v. Brannon,* 399 F. Supp. 133 (M.D.N.C. 1975), *aff'd* 535 F.2d 1249 (4th Cir. 1976).

We also reject the defendant's claimed privacy and fourth amendment violations based upon the inspection requirement of sec. 9.33(6)(a)1.j., Madison General Ordinances.[5] The defendant was not prosecuted under that section so she lacks standing to question the constitutionality of that statute. *City of Milwaukee v. Milwaukee Amusement, Inc.,* 22 Wis.2d 240, 251, 125 N.W.2d 625 (1964).

The Wisconsin Supreme Court has recently addressed the issue of standing:

[A] party has standing to raise constitutional issues only when his or her own rights are affected. He or she

[5] Section 9.33(6)(a)1.j., Madison General Ordinances, provides that:

The establishment shall permit inspections of the premises at any time during business hours by Building Inspectors, Fire Inspectors, Health Inspectors, or personnel of any law enforcement agency.

may not vindicate the constitutional rights of a third party. A party has standing to challenge a statute if that statute causes that party injury in fact and the party has a personal stake in the outcome of the action. This court adheres to this rule of standing because a court should not adjudicate constitutional rights unnecessarily and because a court should determine legal rights only when the most effective advocate of the rights, namely the party with a personal stake, is before it. (Citations omitted.) *Mast v. Olsen*, 89 Wis.2d 12, 16, 278 N.W.2d 205, 206–07 (1979).

Section 9.33 (6) (a) 1.j., Madison General Ordinances, has caused defendant no injury in fact. She does not have standing to assert the unconstitutionality of that section of the ordinance.

For the same reasons she cannot challenge the constitutionalty of secs. 9.33 (6) (a) 1.b or 9.33 (6) (a) 1.c., Madison General Ordinances.[6] These sections relate to the permitted signs and hours of operation of massage establishments. She was not convicted of violating either section.

We are not persuaded by the defendant's argument that, because she is charged with violating the licensing provisions of sec. 9.33 (3) (a), Madison General Ordinances, and because such licensing is predicated on the defendant's "acquiescence" to these additional unconsti-

---

[6] Section 9.33 (6) (a) 1.b., Madison General Ordinances, provides that:

Only one non-flashing business sign clearly identifying the establishment as a massage establishment shall be posted at the main entrance. No description of services shall be permitted on such sign.

Section 9.33 (6) (a) 1.c., Madison General Ordinances, provides that:

No establishment shall be open for business between the hours of 10:00 p.m. and 8:00 a.m.

tutional provisions, she has standing to challenge these provisions of the ordinance. There is no evidence in the record that defendant sought and was denied a license because she had objected to complying with these provisions. There is, in fact, no evidence to indicate whether the defendant was or was not willing to "acquiesce" to each of the provisions, and thus there is no basis for determining whether she was harmed by them. The defendant asserts at best a hypothetical harm; one insufficient to confer standing upon her to litigate these issues.

(3) *Rights of Equal Protection and Due Process*

The defendant argues that secs. 9.33(2)(c) and 9.33 (8), Madison General Ordinances,[7] deny her equal protection of the law, and that sec. 9.33 as a whole violates due process, all in violation of the fourteenth amendment to the United States Constitution. We reject both of these arguments.

---

[7] Section 9.33(2)(c), Madison General Ordinances, provides that:

*Massage establishment* means a place of business wherein private massage is practiced, used or made available as a principal use of the premises.

Section 9.33(8), Madison General Ordinances, provides that:

*Exceptions.* This section shall not apply to the following classes of individuals while engaged in the duties of their respective professions:

(a) Physicians, surgeons, chiropractors, osteopaths, masseurs, or physical therapists licensed or registered to practice their respective professions under the laws of the State of Wisconsin, or nurses registered under the laws of the State of Wisconsin, acting under their direction and control.

(b) Barber shops and beauty parlors, barbers and beauticians licensed under the laws of the State of Wisconsin, provided that such massage as is practiced is limited to the head and scalp.

(c) Accredited high schools and colleges and coaches and trainers therein while acting within the scope of their employment.

The defendant's equal protection claim is based upon the fact that the Madison ordinance requires the licensing of massage establishments, but creates an exception to the licensing requirement for several classes of individuals while engaged in the duties of their respective professions. Those excepted included physicians, chiropractors, osteopaths, masseurs, physical therapists and nurses, barbers and barber shops, beauticians and beauty parlors, and coaches and trainers in accredited high schools and colleges. The defendant contends that requiring her to comply with the licensing requirement while exempting members of other professions from compliance violates the equal protection doctrine.

Our initial inquiry is into the level of scrutiny which we must adopt in assessing this equal protection challenge.

As a general rule, in the absence of a suspect classification or a fundamental interest, the question in an equal protection case is whether the legislative distinction is arbitrary and without a rational relationship to a legitimate legislative objective. *Marmolego v. ILHR Department*, 92 Wis.2d 674, 683, 285 N.W.2d 650, 654 (1979).

The defendant asserts that we must employ a stricter level of scrutiny than the "rational relationship" test. She argues that her right to pursue a legitimate business is a "fundamental interest" which compels our use of a heightened level of scrutiny in examining her equal protection challenge.

The defendant bases her assertion that her right to pursue her business is a fundamental interest on *New State Ice Co. v. Liebmann*, 285 U.S. 262 (1932). That decision, holding unconstitutional the denial of a license to manufacture and sell ice where existing businesses were deemed sufficient to meet the need for the product,

was one of the last of a line of cases[8] which struck down much economic and social regulation as violative of substantive due process. The case stands for the proposition that most businesses should be able to operate free of any sort of governmental regulation, a proposition that has long since been repudiated by the United States Supreme Court and by lower courts. *See, e.g., Whalen v. Roe,* 429 U.S. 589, 597 (1977); *Boylan v. United States,* 310 F.2d 493, 497 (9th Cir. 1962), *cert. den.,* 372 U.S. 935 (1963); L. Tribe, *American Constitutional Law* at 442–55 (1978).

The *Liebmann* case must also be distinguished from the facts of this case. The Court's holding in *Liebmann,* 285 U.S. 262, was prompted by the fact that the licensing statute authorized the denial of a license to do business if the licensing authority felt that the particular business was not needed at a given locality; the statute in essence allowed the creation or perpetuation of a monopolistic environment. The Madison ordinance is merely regulatory, not monopolistic, in nature; it cannot be used to prevent a legitimate business from operating.

We will not resurrect the *Liebmann* rationale as advanced by the defendant. As the fifth circuit stated in *Pollard v. Cockrell,* 578 F.2d 1002, 1012 (5th Cir. 1978):

[T]he theory that classifications affecting the right to pursue a legitimate business demand strict scrutiny flies in the face of the well established rule that state regulations of business or industry are to be reviewed under the less exacting "rational basis" standard.

■■■■

In reviewing the Madison ordinance under the rational basis standard, our focus is on only whether the statutory classification bears any rational relationship to a le-

---

[8] The line of cases began with *Allgeyer v. Louisiana,* 165 U.S. 578 (1897), and ended with *West Coast Hotel v. Parrish,* 300 U.S. 379 (1937). *See generally,* L. Tribe, *American Constitutional Law* at 427–55 (1978).

gitimate governmental interest. *Marmolego,* 92 Wis.2d at 683; *Wis. Bingo Sup. and Equip. Co. v. Bingo Control Bd.,* 88 Wis.2d 293, 307, 276 N.W.2d 716 (1979). We also note that "[i]t is an acknowledged principle of law that a classification, though discriminatory, is not arbitrary or capricious, and therefore not violative of the equal protection requirement, if any statement of facts reasonably can be conceived which will sustain it." *Harris v. Kelley,* 70 Wis.2d 242, 254–55, 234 N.W.2d 628, 633 (1975).

We are aided in our application of these principles to this case by a set of specific standards that have been created by the Wisconsin Supreme Court to measure the reasonableness of a statute's classifications. These standards, articulated in *Harris,* 70 Wis.2d at 252, 234 N.W.2d at 632, are:

(1) All classifications must be based upon substantial distinctions which made one class really different from another.

(2) The classification adopted must be germane to the purpose of the law.

(3) The classification must not be based upon existing circumstances only and must not be so constituted as to preclude addition to the numbers included with a class.

(4) To whatever class a law may apply, it must apply equally to each member thereof.

(5) The characteristics of each class could [sic] be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.

The classifications made by secs. 9.33(2)(c) and 9.33(8), Madison General Ordinances, are based upon substantial distinctions. Those persons exempted from the licensing requirements are, for the most part, already licensed or regulated by the state. Further, Madison's legislative body could reasonably have concluded that those

persons exempted were less likely than members of the regulated class to engage in commercial sexual activity. In the absence of any evidence in the record to the contrary, we find that there is a rational basis for the classification.

By the same token, the classification is germane to the purpose of the law. One purpose of sec. 9.33, Madison General Ordinances, is to prevent sexual massages while permitting other types of massage. There is no need to regulate those persons who by nature of their state license or registration, or by nature of their business or profession, are unlikely to engage in sexual massages. There is also little need to regulate businesses that employ massage only as an incident to the business.

The defendant did not show that the classification is based upon existing circumstances only, or that it precludes addition to the numbers included in the class. The ordinance applies equally well to other, prospective circumstances and makes no limit on those included in the class. Nor has the defendant argued that the law does not apply equally to each member of the regulated class.

There is a vast difference between the class of physicians, nurses, barber shops, and athletic coaches, and the class of massage establishment operators and their employees. The stipulation of facts readily reveals that the defendant is in business primarily to sell sexual gratification. None of those excepted from regulation have ever been considered to be in that business. The classes are sufficiently different that there is no question as to the propriety of the legislation.

The defendant also attacks the Madison ordinance on equal protection grounds by arguing that other types of commercial sex businesses (such as nude photography studios and nightclubs with nude entertainment) are not

regulated, though massage establishments are. This is a matter of legislative judgment. Legislation may properly proceed piecemeal depending on the seriousness of the evil presented in a particular industry or occupation. *State ex rel. Baer v. City of Milwaukee,* 33 Wis.2d 624, 634, 148 N.W.2d 21, 26 (1967) ; *State v. Hart,* 89 Wis.2d 58, 68–69, 277 N.W.2d 843, 848 (1979).

The defendant's final attack on sec. 9.33, Madison General Ordinances, is that the ordinance as a whole violates due process. The defendant asserts, without support in the record, that the ordinance "imposes onerous and unnecessary restrictions upon persons operating, owning, or employed by a massage establishment." The defendant also asserts, without further explanation, that "the city council has chosen a means of accomplishing [its] purpose which is not rationally related to the objective." We are offered no explanation as to why this might be true.

The defendant has a heavy burden of proving that no reasonable basis exists for the enactment of the ordinance. *Baer,* 33 Wis.2d at 630; *Hart,* 89 Wis.2d at 64. The defendant is far from meeting that burden. The city council determined that a problem existed and enacted an ordinance to alleviate that problem. The defendant has not demonstrated that the enactment of the ordinance was not reasonably related to the identified problem. *See Wes Ward Enterprises, Ltd. v. Andrews,* 42 Ill. App.3d 458, 355 N.E.2d 131 (1976).

We note that defendant failed to file an appendix in this case, as required by Rule 809.12(2). We also note that both parties cited an unpublished court of appeals decision in their briefs, contrary to Rule 809.23(3). Since both parties are in violation of this rule, we shall not in this case impose sanctions authorized by Rule 809.83(2). No costs to either party.

*By the Court.*—Judgment affirmed.