STATE EX REL. WISCONSIN LUTHERAN HIGH SCHOOL CON-
FERENCE, Respondent, vs. SINAR, Building Inspector,
and another, Appellants.*

*April 8—June 8, 1954.*

* Motion for rehearing denied, with $25 costs, on October 5, 1954.

For the appellant Sid H. Sinar there were briefs and oral argument by *Herbert L. Mount* of Milwaukee.

For the appellant E. L. Vanderjagt there was a brief by *Bender, Trump, McIntyre, Trimborn & Godfrey,* attorneys, and *Walter H. Bender* of counsel, all of Milwaukee, and oral argument by *Walter H. Bender.*

For the respondent there was a brief by *von Briesen & von Briesen* and *C. R. Dineen,* and oral argument by *Mr. Dineen* and *Mr. Richard J. McGinn,* all of Milwaukee.

BROWN, J.   Ch. 62, Stats., is the General Charter Law for the government of cities below the first class. The city of Wauwatosa is a city of the third class and is subject to ch. 62. Sec. 62.23 (7), pars. (a), (b), and (c), Stats., grants to cities the power to zone their areas, as follows:

"(a) *Grant of power.* For the purpose of promoting health, safety, morals, or the general welfare of the community, the council may by ordinance regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures, and land for trade, industry, residence, or other purposes provided that there shall be no discrimination against temporary structures. This subsection and any ordinance, resolution, or regulation, heretofore or hereafter enacted or adopted pursuant thereto, shall be liberally construed in favor of the city

and as minimum requirements adopted for the purposes stated. It shall not be deemed limitation of any power elsewhere granted.

"(b) *Districts.* For any and all of said purposes the council may divide the city into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of this section; and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, or use of buildings, structures, or land. All such regulations shall be uniform for each class or kind of buildings and for the use of land throughout each district, but the regulations in one district may differ from those in other districts.

"(c) *Purposes in view.* Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic, and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements. Such regulations shall be made with reasonable consideration, among other things, of the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such city."

Pursuant to this authority the common council of Wauwatosa adopted a zoning ordinance whose provisions, material to this action, are as follows:

"5. That section 14.03 (1) of said zoning code defines 'A' residence district regulations as follows:

"(1) *Use:* No building or premises shall be used and no building shall be hereafter erected or altered within any 'A' residence district, unless otherwise provided in this ordinance, except for the following uses:

"(a) Single family dwellings.

"  . . .

"(e) Public schools and private elementary schools."

The constitutionality of the general power of the state to zone property in the public interest is well established. It is a police power and it may be delegated by the state to the cities. *State ex rel. Tingley v. Gurda* (1932), 209 Wis. 63, 243 N. W. 317; *State ex rel. Carter v. Harper* (1923), 182 Wis. 148, 196 N. W. 451. Like other examples of regulation under the police power, a specific zoning ordinance must meet the constitutional demands of due process and the equal protection of the law. It must ". . . provide those in similar circumstances, among whom no reasonable basis for distinction exists, with equal protection of the law, as is constitutionally required of all ordinances as well as statutes." 8 McQuillin, Mun. Corp. (3d ed.), p. 106, sec. 25.61.

Reference to sec. 14.03 (1) (e) of the ordinance discloses that the erection of public high schools is permitted and the erection of private schools above the elementary rank is forbidden in the "A" residence district. The defendant inspector relied on this prohibition in refusing to issue a building permit to the plaintiff.

The power to zone is granted to cities in order to promote the "health, safety, morals, or the general welfare of the community." Sec. 62.23 (7) (a), Stats., *supra*. We have recognized that the term "general welfare" includes considerations of public convenience and general prosperity. *State ex rel. Carter v. Harper, supra.* The means adopted to promote these ends must, of course, bear a reasonable relation to the declared purpose. Id., p. 152. *Nectow v. Cambridge* (1928), 277 U. S. 183, 48 Sup. Ct. 477, 72 L. Ed. 842. Appellants have made it abundantly clear that respondent's projected school has many features which seriously impair the social and economic benefits to the entire community which the zoning law is designed to preserve and promote. It will add to the congestion of the surrounding streets. Athletic events will bring noisy crowds and, if the contests

are held at night, there will be bright lights to interfere with the peace and comfort of the neighborhood. The school property will be taken from the tax roll, thus increasing the financial burden of the city's taxpayers. The presence of the school will lessen the taxable value of near-by homes and will deter the building of new homes in the area. Other detriments are easily thought of. But, as respondent points out, each such discordant feature attends the presence of a public school to an equal degree.

Respondent submits, therefore, that there is no difference in the effect on the community between the permitted public high school and the prohibited private one and hence the ordinance's discrimination between them is unreasonable, not founded on a difference in fact material to the object sought to be attained by building ordinances, and is a measure which denies to respondent the equal protection of the laws and deprives it of property without due process of law, contrary to the provisions of the Fourteenth amendment of the United States constitution. Therefore, it asserts, so far as this case is concerned, the ordinance is void.

". . . a classification to be valid must always rest on a difference which bears a fair, substantial, natural, reasonable, and just relation to the object, act, or persons in respect to which it is proposed." 12 Am. Jur., Constitutional Law, p. 153, sec. 481. Respondent cites *Catholic Bishop of Chicago v. Kingery* (1939), 371 Ill. 257, 20 N. E. (2d) 583, and *Miami Beach v. State ex rel. Lear* (1937), 128 Fla. 750, 175 So. 537. These are cases whose facts are practically identical with the present one. In them the respective courts held that there was no substantial difference between public and private schools in relation to the object sought to be accomplished by the zoning ordinance and therefore, in so far as it prohibited the presence of a private school while allowing a public one, it was void. If these decisions were

controlling authority upon us we would necessarily affirm the learned trial court for we cannot distinguish them from ours in any material respect. But their authority is persuasive, only, and it fails to persuade.

The subject of public education and the establishment and operation of public schools is a governmental function of this state. Art. X, Wis. Const.; chs. 36 to 42, Stats. The city school plan, secs. 40.50 to 40.60, Stats., has made the city the municipal entity for the administration of school affairs of those cities which have come under it, as the city of Wauwatosa has done. *State ex rel. Board of Education v. Racine* (1931), 205 Wis. 389, 236 N. W. 553. In the performance of other governmental functions we do not restrict the behavior of persons or the use of property to the same extent that we do when only private interests are pursued and the fact that the standards are different commonly raises no suspicion that an illegal discrimination is thereby imposed or that the difference between municipality and citizen is insufficient to support separate classifications. For example, who considers he has a right to ignore speed laws because they need not be observed by the fire department responding to a call? Sec. 85.40 (5). Nor is the state controlled by a building requirement which an individual must observe. *Milwaukee v. McGregor* (1909), 140 Wis. 35, 121 N. W. 642. It may be that the essential differences between government and governed are so great that the two are in different classes *per se* at any time when governmental functions are involved and no ordinance is void by reason of discrimination, alone, merely because it gives a preference to the government, acting in its governmental capacity, which it withholds from private corporations or individuals.

However, we decide the present appeal on the narrower ground that tangible differences material to the classifications of the ordinance can be readily pointed out which sus-

tain the distinction made by the ordinance between the schools. To begin with, the term "public" is the antithesis of "private." The public school is not a private one. They serve different interests and are designed to do so. The private school is founded and maintained because it *is* different. Is that difference material to the purpose of zoning? In many respects the two schools perform like functions and in probably all respects concerning noise, traffic difficulties, and the other objectionable features already mentioned they stand on an equality, so that in several of the objects of zoning ordinances,—the promotion of health, safety, and morals, as laid down by sec. 62.23 (7) (a), Stats., and developed by respondent's brief, we may not say that the two schools differ. But when we come to "the promotion of the general welfare of the community,"—"Ay, there's the rub." The public school has the same features objectionable to the surrounding area as a private one, but it has, also, a virtue which the other lacks, namely, that it is located to serve and does serve that area without discrimination. Whether the private school is sectarian or commercial, though it now complains of discrimination, in its services it discriminates and the public school does not. Anyone in the district of fit age and educational qualifications may attend the public high school. It is his right. He has no comparable right to attend a private school. To go there he must meet additional standards over which the public neither has nor should have control. The private school imposes on the community all the disadvantages of the public school but does not compensate the community in the same manner or to the same extent. If the private school does not make the same contribution to public welfare this difference may be taken into consideration by the legislative body in framing its ordinance. If education offered by a school to the residents of an area without discrimination is considered by the council to compensate for

the admitted drawbacks to its presence there, that school may be permitted a location which is denied to another school which does not match the offer, and we cannot say that such a distinction is arbitrary or unreasonable or that such discrimination between the two schools lacks foundation in a difference which bears a "fair, substantial, reasonable, and just relation" to the promotion of the general welfare of the community, which is the statutory purpose of zoning laws in general and of the ordinance in question.

While we have not found any decisions sustaining the public versus private distinction between schools in zoning cases and respondent has found two to the contrary, *supra,* it has not been difficult to find supporting examples in other activities. Thus, an ordinance permitted only municipal parks in a residence district. A property owner set up a bathing beach ostensibly run as a private club but actually open to the public. He asserted that it was a park and that there was an illegal discrimination by the ordinance which permitted a municipal park but not a private one. The court said: "There is nothing unreasonable in the classification that makes a distinction between municipally owned and privately owned playgrounds and parks." *McCarter v. Beckwith* (1936), 247 App. Div. 289, 285 N. Y. Supp. 151, 154. The decision was affirmed without opinion, 272 N. Y. 488, 3 N. E. (2d) 882, and was denied certiorari, 299 U. S. 601, 57 Sup. Ct. 193, 81 L. Ed. 443.

In *Golf, Inc., v. District of Columbia* (C. C. A. D. C. 1933), 67 Fed. (2d) 575, a corporation established a driving range in a residential area. The ordinance prohibited this activity although it would have been permitted if conducted under public auspices. The corporation contended that the zoning ordinance was void because it made an unreasonable classification. The decision rested on the distinction between public benefit and a more restricted advantage which we make in the instant case.

The headnote states:

"Zoning regulations *held* not discriminatory because permitting use of lands in residential districts for public recreational purposes while denying to private individuals similar use, . . . "

In the opinion on page 577 the court said:

"It is also contended by the corporation that the regulations are discriminatory in that they permit the use of lands in residential zones in the District of Columbia for public recreational purposes, but deny a similar use to private individuals.

"We cannot agree with this contention. A use of public parks or recreational grounds in a residential area for the common benefit of all the people of the district is not to be compared with the use of lands by a private corporation for its exclusive profit in a manner forbidden by the zoning regulations."

In *Cincinnati v. Wegehoft* (1928), 119 Ohio, 136, 162 N. E. 389, an effort was made to enjoin the city from building a firehouse in an area zoned for residential purposes only, except that the ordinance provided that the city was exempt from such restriction as far as the erection of its own municipal buildings was concerned. The court held that this discrimination did not violate the state and federal constitutions.

Even more persuasive is our own leading case on zoning ordinances, *State ex rel. Carter v. Harper, supra.* The ordinance there under consideration contained a provision which allowed a public service corporation, upon a finding of public necessity and convenience, to erect buildings and put its property to use in its business in *any* zone. We said, at page 162:

"It must be apparent that an ordinance enacted pursuant to state authority which prevents the erection of buildings or the conduct of business deemed inimical to public interest need not also prohibit the erection of buildings or the con-

duct of business which is essential to the comfort and convenience of the public and which the duly constituted authority of the state determines to be necessary for the public service which a public utility is required to render."

The private corporation, because affected by the public interest, was enabled to conduct activities in zones where similar industries not so affected were forbidden to operate. If such preferential treatment of a mere private corporation did not invalidate the ordinance because of the public interest in the utility, how much stronger is the position of the appellants whose contention rests on an ordinance which gives the preference to the public,—the municipality,—itself! We consider the authority very strong in support of the conclusion which we have already reached independently, that no unconstitutional or otherwise illegal discrimination appears in the Wauwatosa zoning ordinance by reason of its exclusion of private high schools from "A" residence zones while accepting public schools of the same rank. Consequently, the refusal of appellant building inspector to issue a building permit for the erection of respondent's private high school was proper and must be sustained.

*By the Court.*—Orders and judgment reversed. Cause remanded with directions to quash the writ of mandamus.

The following opinion was filed June 18, 1954:

STEINLE, J. (*dissenting*). The ordinance in question permits the establishment and operation of a public high school within the prescribed zone, but prohibits the erection and conducting of a private high school therein.

The majority say that since there is a substantial distinction between public and private schools in that particularly the public school must serve all, whereas the private school restricts admission, there is no illegal classification under the ordinance, and that the discrimination resulting therefrom is not unreasonable.

Zoning regulations are foundationed on police power. The ultimate purpose of zoning is associated with public health, safety, morals, and general welfare.

In *State v. Withrow* (1938), 228 Wis. 404, 280 N. W. 364, this court held that the scope of the police power is confined to the enactment of regulations to promote the public health, safety, and welfare.

In *Geisenfeld v. Shorewood* (1939), 232 Wis. 410, 287 N. W. 683, it was held that a zoning ordinance is unconstitutional and void if it is arbitrary and unreasonable and has no substantial relationship to the public health, safety, morals, or general welfare of a municipality.

In *State ex rel. Ford Hopkins Co. v. Mayor* (1937), 226 Wis. 215, 276 N. W. 311, the court said that in the exercise of police power all classifications must be based upon substantial distinctions which make one class really different from another.

The primary purpose of our high schools, private or public, is to educate pupils of a particular age. The state is interested to have all such children so educated in order that they may become good citizens. Private high schools as well as public high schools promote the general welfare and there is no substantial distinction in the purpose which they serve. If the private high schools did not exist, the public would be obliged to furnish facilities for those attending the private institutions.

In 47 Am. Jur., Schools, p. 459, sec. 220, the following observation is made:

". . . the only difference between a public and private school is that one is organized and maintained as one of the institutions of the state, whereas the other is maintained by private individuals or corporations."

The placement of a private high school in the area in question here would no more offend or interfere with the

health, safety, morals, and general welfare of the community than would the presence of a public high school which the city authorities under the ordinance are permitted to erect in the zoned section. As was well said in the case of *Catholic Bishop of Chicago v. Kingery* (1939), 371 Ill. 257, 259, 20 N. E. (2d) 583, 584:

"We fail to perceive to what degree a Catholic school of this type will be more detrimental or dangerous to the public health than a public school. It is not pointed out to us just how the pupils in attendance at the parochial school are any more likely to jeopardize the public safety than the public school pupils. Nor can we arbitrarily conclude that the prospective students of the new school will seriously undermine the general welfare. As a matter of fact such a school, conducted in accordance with the educational requirements established by state educational authorities, is promotive of the general welfare."

Other cases holding ordinances of this type invalid on the basis of improper classification are: *Miami Beach v. State ex rel. Lear* (1937), 128 Fla. 750, 175 So. 537; *Lumpkin v. Township Committee of Bernards* (1946), 134 N. J. L. 428, 48 Atl. (2d) 798; *Roman Catholic Archbishop of Oregon v. Baker* (1932), 140 Or. 600, 15 Pac. (2d) 391; *State ex rel. Synod of Ohio of United Lutheran Church v. Joseph* (1942), 139 Ohio St. 229, 39 N. E. (2d) 515; *Women's Kansas City St. Andrew Society v. Kansas City* (8th Cir. 1932), 58 Fed. (2d) 593; *State v. Northwestern Preparatory School* (1949), 228 Minn. 363, 37 N. W. (2d) 370; *Phillips v. Homewood* (1951), 255 Ala. 180, 50 So. (2d) 267; *Yanow v. Seven Oaks Park, Inc.* (1953), 11 N. J. 341, 94 Atl. (2d) 482. See also 8 McQuillin, Mun. Corp. (3d ed.), p. 40, sec. 25.15.

It is a rule, as pointed out by the majority, that valid classification for zoning may be based on distinctions between municipal and private property and activities. However, it

is significant that the courts of the country in zoning cases have treated private school situations differently than other endeavors of private enterprise. In the field of education the courts in zoning cases have made an exception to the rule and have not distinguished as between private and public schools. There is good reason for such exception.

Cases cited by the majority, to wit: *McCarter v. Beckwith* (1936), 287 App. Div. 289, 285 N. Y. Supp. 151, 272 N. Y. 488, 3 N. W. (2d) 882, and *Golf, Inc., v. District of Columbia* (C. C. A. D. C. 1933), 67 Fed. (2d) 575, involve a privately owned park and a privately owned golf driving range, respectively. It seems, however, that there is a substantial distinction between schools and places of recreation. Private schools must comply with state standards in matters of education. Privately owned recreation places need not so comply. By law, schooling is required to a particular age. The state permits such schooling in either public or private establishment. It does not require recreation to be taken in either park or golf range. The private park or golf range is a profit-making venture. In the instant situation the owner of the land who petitions for the building permit is a non-profit organization.

Since it appears that the private high school which respondent desires to erect on its land in the zoned area is in the same category as the public high schools of Wauwatosa, and of the type which that municipality is free to erect in the zoned section, and that such private high school would serve the same purpose of educating the children of the community and vicinity as do the public high schools of that city, I am forced to the conclusion that the barring of respondent's contemplated project by this zoning ordinance is discriminatory, arbitrary, and unreasonable and clearly violative of sec. 1, art. I of the Wisconsin constitution and contrary to art. I

of the Fourteenth amendment of the federal constitution and therefore void. I would affirm the judgments of the circuit court.

I am authorized to say that Mr. Justice BROADFOOT joins in this dissent.