SEWARD CHAPEL, INC., Thomas Reese, Barry Hildebrand, Michael Van Deusen, Leslie Dooley, May Dooley and Conrad Oberg, Appellants,

v.

CITY OF SEWARD, Alaska and Kenai Peninsula Borough, Appellees.

No. 5729.

Supreme Court of Alaska.

Nov. 26, 1982.

Richard W. Garnett, III, Erwin, Smith & Garnett, Anchorage, for appellants.

Kenneth P. Jacobus and James F. Klasen, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, for appellees.

Before BURKE, C.J., and RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

## OPINION

RABINOWITZ, Justice.

### I. OVERVIEW

This appeal presents a zoning dispute of constitutional magnitude between Seward Chapel, Inc.[1] and the City of Seward.[2] The principal issue on appeal is whether the federal or Alaska constitutions, or both, compel the city to allow Seward Chapel to operate a parochial school in its church building notwithstanding a zoning ordinance which excludes all nonpublic schools from the residential area in which Seward Chapel's building is located. We conclude that the ordinance is constitutionally permissible.

---

1. In one of the two cases which have been consolidated, the plaintiffs include several members of the congregation of Seward Chapel. We will refer to the plaintiffs collectively as Seward Chapel for convenience.

2. The Kenai Peninsula Borough is also a party because the power to enact zoning ordinances for the city of Seward is vested in the borough.

## II. FACTS

The case is set in a residential subdivision of the City of Seward called Forest Acres, an area described by the superior court as "the premier residential subdivision on the Kenai Peninsula." The area has a rural character and, according to the city, affords residents a "peaceful seclusion." From the record it appears that a majority of the residents of Forest Acres would prefer that their peaceful seclusion not be disturbed by a parochial school.

Seward Chapel's dispute with the city over zoning began in 1974, when Pastor Paul Pichotta and Michael Van Deusen of the Abbott Loop Christian Center in Anchorage came to Seward to establish a church. Pastor Pichotta located two adjacent lots in Forest Acres which were owned by a fellow church member and purchased the lots[3] after the city approved his application for a permit to build a church on the lots. Although Pastor Pichotta expressed his intent to operate a parochial school as well as a church on the premises, the city made it clear that a parochial school was not permitted in Forest Acres under the then-existing zoning laws.[4] Notwithstanding the limitation on parochial schools, Se-

ward Chapel constructed a church on the Forest Acres site; the church flourished and, at the time of trial in 1980, had a congregation of ninety to one-hundred members.

The applicable zoning ordinance has been amended several times since Seward Chapel acquired its site in Forest Acres. In 1978 the ordinance, which then allowed churches and accessory uses by permit, was amended to create a new "Rural Residential" ("RR") zone;[5] Forest Acres, which comprises seven to eight percent of the city, was zoned RR, and was the only area so zoned within the city. The RR classification provided for minimum lot sizes of one-half acre and limited the use of lots largely to single-family residences. The pertinent change for purposes of this appeal is that churches and nonpublic schools were excluded from the newly created RR zone and from some other residential zones.

In May 1979, the zoning ordinance was again amended; this amendment restored the earlier provision permitting churches in residential areas[6] after the borough's senior planner advised that zoning ordinances which wholly exclude churches from residential areas occasionally have been de-

---

**3.** A $10,000 purchase price made the two lots, which totalled 1.6 acres, a "good buy." Seward Chapel later acquired a third adjoining lot, for a total parcel of 2.6 acres.

**4.** At a meeting of the Planning and Zoning Commission which occurred a month before Pastor Pichotta acquired the Forest Acres site, the pastor advised the commission that the church expected to operate a "five day a week" school in addition to a church. He was told that a school was not a permissible use of the site. In a letter to Pastor Pichotta the city confirmed its view that the zoning regulations excluded schools. The pastor testified at trial that he was "disappointed . . . when I found out that we would not be able [to operate a school], but I felt we could pursue that later."

Seward Chapel argues that, notwithstanding notice that the site could not be used as a parochial school, the church's good faith interpretation of the zoning ordinance was that a school would be permitted as an accessory use to the church building. Although there is nothing in the record indicating that this was in fact Seward Chapel's interpretation of the zoning ordinance when it purchased the Forest Acres

site, we agree that that interpretation is not without merit. The zoning ordinance permitted churches and accessory uses and did not specifically address the question of parochial schools; several courts have held that parochial schools are accessory uses within the meaning of zoning ordinances which permit accessory uses to churches. *See, e.g., City of Concord v. New Testament Baptist Church,* 118 N.H. 56, 382 A.2d 377 (1978) (five day per week school is a facility "usually connected with a church"). Nonetheless, in this case the possibility that a parochial school might be considered an accessory use to the church was foreclosed when the zoning ordinance was amended to address specifically the question of parochial schools, thus removing such schools from the general classification of accessory uses. *See infra* note 10 and accompanying text; *Damascus Comm. Church v. Clackamas County,* 45 Or.App. 1065, 610 P.2d 273 (1980), *appeal dismissed,* 450 U.S. 902, 101 S.Ct. 1336, 67 L.Ed.2d 326 (1981).

**5.** Kenai Peninsula Borough Ordinance 78–26.

**6.** Kenai Peninsula Borough Ordinance 79–20.

clared unconstitutional.[7] The provision excluding nonpublic schools remained unchanged.

In July 1979, Seward Chapel commenced the proceedings which led to this appeal. The church filed suit in superior court, seeking an injunction against enforcement of the zoning restriction on nonpublic schools and a determination that exclusion of parochial schools contravenes the First and Fourteenth Amendments of the federal constitution and Article I, sections 1 and 4 of the Alaska Constitution. Shortly after filing suit Seward Chapel began operating a parochial school with about a dozen students; pending the outcome of a motion for a preliminary injunction, the church operated its school in a carpenter's shop owned by a church member and located several miles from the church rather than in the church building.

In April 1980, the superior court preliminarily enjoined enforcement of the zoning ordinance's prohibition of nonpublic schools in Forest Acres, and Seward Chapel for the first time began operating its school in its church building. The court did not then pass upon the constitutional issues raised by Seward Chapel but instead required the church to apply for a contract zoning agreement which would allow operation of a school on its premises.[8] Seward Chapel's application for a contract zoning agreement was denied;[9] the denial was appealed

---

**7.** *See, e.g., Church of Christ v. Metropolitan Bd. of Zoning Appeals,* 371 N.E.2d 1331 (Ind. App.1978); *City of Sherman v. Simms,* 143 Tex. 115, 183 S.W.2d 415 (1944); *State ex rel. Lake Drive Baptist Church v. Village of Bayside Bd. of Trustees,* 12 Wis.2d 585, 108 N.W.2d 288 (1961). *But see, e.g., Corporation of Presiding Bishop v. City of Porterville,* 90 Cal.App.2d 656, 203 P.2d 823 (1949), *appeal dismissed,* 338 U.S. 805, 70 S.Ct. 78, 94 L.Ed. 487 (1949); *Miami Beach United Lutheran Church of the Epiphany v. City of Miami Beach,* 82 So.2d 880 (Fla.1955) (en banc).

**8.** Apparently the superior court believed that Seward Chapel was required to pursue the administrative remedy of a contract zoning application prior to seeking judicial relief. *Cf. Moore v. City of East Cleveland,* 431 U.S. 494, 521, 97 S.Ct. 1932, 1946, 52 L.Ed.2d 531, 550 (1977) (Burger, C.J., dissenting) (failure to pursue administrative remedy should foreclose constitutional claims). In light of the fact that Seward Chapel had previously sought a contract zoning agreement, which was denied, we believe a second application was unnecessary.

**9.** The decision of the Planning and Zoning Commission stated in part:

... We take judicial notice of the fact that there are other zoning districts within the city limits of Seward where a school-church complex such as that proposed by Seward Chapel was permissible at the time Seward Chapel proposed to build its original church in Forest Acres and remain available for that type of complex today.

The proposed private school poses a likely increase in the noise, traffic and, general activity patterns in the neighborhood of Forest Acres as to be inconsistent with the character of an area zoned rural residential.

· Earlier characterizations of the school program as a quiet group of perhaps a dozen little children and their teachers within the present church building in no way reflects the Applicant's plans for the proposed school complex. Speaking on behalf of the Applicant, Rev. Paul Pichotta stated that:

(a) It is the teaching of his church that members have an obligation to send their children to the church school and that all but four of the children in the congregation do in fact attend that private school.

(b) It is the intent of the church to increase its size as rapidly as possible.

(c) The enrollment of the school is likely to be approximately twenty-five students within a year or two, which is double the present number attending the school.

(d) The religious tenets of this church mandates not only an elementary school at the same location as the church, but also a junior high and senior high school and whatever training is additionally necessary "until a child leaves home."

.    .    .    .    .

The City of Seward and the Kenai Peninsula Borough have a significant interest in maintaining an orderly, rational zoning plan for the City of Seward. The absence of an enforceable zoning plan would undermine the peace and good order of the municipality as well as the precautions taken for public health and safety, which are the underlying reasons for the zoning regulations. The process of separating different land uses within certain parts of the City, including separating industrial from residential uses and classifying different residential districts, including those characterized as rural residential, is of such primary importance to the public health, safety and welfare as to be a compelling public interest.

When that interest is balanced against the religious practice of conducting a private

through appropriate administrative channels and found its way back to the superior court, where it was consolidated with the prior declaratory judgment action. Prior to trial, the city's zoning ordinance was amended a third time in response to Seward Chapel's contention that the city could not exclude only nonpublic schools from Forest Acres; the amended ordinance excluded all schools, public and nonpublic, from areas zoned Rural Residential.[10]

The superior court affirmed the administrative denial of Seward Chapel's application for a contract zoning agreement and, after a bench trial, ruled that the zoning ordinance, as finally amended, did not abridge Seward Chapel's rights under the state and federal constitutions.[11] For the reasons set forth below we affirm the superior court's rulings.

school in a prohibited zone, the religious practice must yield. This is especially so where other zones permit that very religious practice and were available prior to site selection by the church. The compelling need is for a rational, reasonable, enforced zoning plan which can accommodate competing or conflicting land use needs by separating them geographically. The zoning regulation for the entire city does accommodate the desire of churches to conduct private schools in certain designated areas; no further accommodation is required.

The record also indicates that a major factor in the decision to deny Seward Chapel's request for a contract zoning agreement was the church's refusal to place a limit on the number of students who would attend the Seward Chapel School.

We agree with the superior court's ruling that Seward Chapel has failed to demonstrate that the Planning and Zoning Commission abused its discretion in denying Seward Chapel's request for a contract zoning agreement.

10. Kenai Peninsula Borough Ordinance 80–21.

11. The superior court's findings of fact, which are adequately supported by the record, included the following:

Prior to the purchase of the land by the Seward Chapel, the City of Seward determined, and notified Seward Chapel, that a church would be permitted on the land, but that a school would not be permitted. Notwithstanding this prior knowledge, Seward Chapel purchased the property and constructed a church building on the property.

## III. DUE PROCESS

Seward Chapel first challenges the city's zoning ordinance on the ground that an ordinance which excludes church schools from a residential area contravenes the Due Process Clause of the Fourteenth Amendment [12] and Article I, section 7 of the Alaska Constitution.[13] Seward Chapel argues that the city's zoning rule bears no relation to the public welfare and hence is beyond the scope of the city's zoning power.[14]

The right of a governmental entity to restrict the use of land—without compensating landowners for reductions in the value of property or for the fact that they may be precluded from using their property in a particular manner—was established in *Village of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303 (1926). The *Euclid* due process rule permits a zoning restriction unless the restriction is

... There is no religious belief relating to the location of the school building itself. There is an opinion that the church and school be located in the same building. This opinion is not a religious belief of plaintiffs which is central to the religion, but is simply a pragmatic decision for the convenience of plaintiffs, rather than a decision mandated by a deeply-rooted religious belief.

Seward Chapel could have located elsewhere, in a zone where both schools and churches were permitted, had it elected to do so. There are zones within the City of Seward which could accommodate a church and a school in the same building, as well as areas outside the City limits where such construction could take place.

12. "[No] state shall deprive any person of ... property without due process of law ...."

13. "No person shall be deprived of ... property without due process of law ...."

14. Seward Chapel does not argue that the zoning ordinance reduces the value of its parcel or that the parcel is unsuited to the uses for which it is zoned. *See, e.g., Nectow v. City of Cambridge,* 277 U.S. 183, 48 S.Ct. 447, 72 L.Ed. 842 (1928). In other words, Seward Chapel is not contending that the zoning ordinance is impermissible because it adversely affects the value of the parcel. Rather, Seward Chapel's due process challenge is that a legislative presumption that a parochial or other school is incompatible with a large-lot, single-family residential area is inherently unreasonable.

"clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Id.* at 395, 47 S.Ct. at 121, 71 L.Ed. at 314.

In the case at hand, no one seriously disputes that a Christian school, like a variety of other institutions, contributes to the public welfare. In our view, however, the pertinent question for due process purposes is not whether the Seward Chapel school confers a benefit upon the community but whether a municipal body may reasonably conclude that a school may also generate an adverse impact, such as noise, increased traffic, litter, and the like, which makes it a form of land use which is incompatible with an area populated by single-family residences.

■ For federal constitutional purposes, a zoning ordinance enjoys a presumption of validity when challenged on due process grounds,[15] and an ordinance which limits an area largely to single-family residences is not inherently unreasonable.[16] As the Supreme Court has explained,

> a quiet place where yards are wide, people few, and motor vehicles restricted are legitimate guidelines in a land-use project addressed to family needs.... The po-

lice power is not confined to elimination of filth, stench, and unhealthy places. It is ample to lay out zones where family values, youth values, and the blessings of quiet seclusion and clean air make the area a sanctuary for people.

*Village of Belle Terre v. Boraas,* 416 U.S. 1, 9, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797, 804 (1974). In our view a municipal body does not act arbitrarily and beyond its powers when it concludes that a residential area should be free of the noise, traffic, and other nuisances which a school may engender.[17]

■ We emphasize that this is not a case in which the city has elected to decide the question of zoning for schools in Rural Residential areas on a case-by-case basis by way of a permit system. Had the city so elected we would be inclined to examine more closely the city's grounds for denying a permit in a given case.[18] Here, however, we are dealing instead with the city's legislative judgment that schools are a suitable form of land use in some areas but not in others. Of necessity this judgment—and, indeed, any classifications in a zoning scheme—must draw distinctions between one form of land use and another, between one area and another, and of necessity the

---

**15.** *See, e.g., St. John's Roman Catholic Church Corp. v. Town of Darien,* 149 Conn. 712, 184 A.2d 42, 47 (1962); *cf. Congregation Dovid Ben Nuchim v. City of Oak Park,* 40 Mich.App. 698, 199 N.W.2d 557, 559 (1972) (ordinarily a zoning ordinance is presumed valid, but churches are accorded a preferred status under Michigan law which removes the presumption of validity).

**16.** *See, e.g., Northwood Properties Co. v. Perkins,* 325 Mich. 419, 39 N.W.2d 25, 26 (1949).

**17.** We recognize that there may be situations in which a zoning ordinance which excludes a given use of a parcel may approach or reach arbitrariness if it permits other uses which are functionally indistinguishable in their impact upon the neighborhood. *See, e.g., Ellsworth v. Gercke,* 62 Ariz. 198, 156 P.2d 242 (1945) (ordinance excluding churches arbitrary and unreasonable when permitted uses included schools, libraries, parks, pools, golf courses, fertilizer storage, and livestock); *City of Miami Beach v. State ex rel. Lear,* 128 Fla. 750, 175 So. 537 (1937) (no reasonable basis for excluding private but not public schools); *Westbury Hebrew Congregation, Inc. v. Downer,* 59 Misc.2d 387,

302 N.Y.S.2d 923 (Sup.Ct.1969) (same); *State v. Northwestern Prep. School, Inc.,* 228 Minn. 363, 37 N.W.2d 370 (1949) (no basis for excluding private schools while permitting public and parochial schools; equal protection). *But cf. State ex rel. Wisconsin Lutheran High School Conf. v. Sinar,* 267 Wis. 91, 65 N.W.2d 43 (1954) (distinction between public and nonpublic schools is constitutionally permissible), *appeal dismissed,* 349 U.S. 913, 75 S.Ct. 604, 99 L.Ed. 1248 (1955). That point has not been reached in the case before us.

**18.** *See e.g., West Hartford Methodist Church v. Zoning Board of Appeals,* 143 Conn. 263, 121 A.2d 640 (1956); *Galfas v. Ailor,* 81 Ga.App. 13, 57 S.E.2d 834 (1950); *Caboni v. City of New Orleans,* 321 So.2d 800 (La.App.1975); *Minnetonka Congregation of Jehovah's Witnesses, Inc. v. Svee,* 303 Minn. 79, 226 N.W.2d 306 (1975); *Lumpkin v. Township Committee,* 134 N.J.L. 428, 48 A.2d 798 (1946); *Congregation Committee v. City Council,* 287 S.W.2d 700 (Tex.Civ.App.1956); *State ex rel. Howell v. Meador,* 109 W.Va. 368, 154 S.E. 876 (1930).

distinctions drawn may be imperfect. That a given classification might result in an imperfect fit in a given situation[19] is not alone a sufficient basis for concluding that the zoning classification must be set aside as unreasonable. "[E]very line drawn by a legislature leaves some out that might well have been included. That exercise of discretion, however, is a legislative, not a judicial, function." *Village of Belle Terre v. Boraas,* 416 U.S. at 8, 94 S.Ct. at 1540, 39 L.Ed.2d at 803–04 (footnote omitted).

Similarly, we hold that the zoning scheme does not contravene Article I, section 7 of the Alaska Constitution. As we have explained,

[s]ubstantive due process is denied when a legislative enactment has no reasonable relationship to a legitimate governmental purpose. It is not a court's role to decide whether a particular statute or ordinance is a wise one; the choice between competing notions of public policy is to be made by elected representatives of the people. The constitutional guarantee of substantive due process assures only that a legislative body's decision is not arbitrary but instead based upon some rational policy.

*Concerned Citizens of South Kenai Peninsula v. Kenai Peninsula Borough,* 527 P.2d 447, 452 (Alaska 1974) (footnote omitted). *See also State v. Rice,* 626 P.2d 104, 110–15 (Alaska 1981); *Mobil Oil Corp. v. Local Boundary Commission,* 518 P.2d 92, 100–01 (Alaska 1974). We cannot say that the city's decision to preserve Forest Acres for uses less intensive than schools is not based upon some rational policy. In sum, we conclude that the city's zoning ordinance, whatever its wisdom, is not constitutionally impermissible as violative of Seward Chapel's due process rights.

## IV. FREE EXERCISE

Having concluded that due process limitations do not invalidate the city's zoning ordinance, we turn to Seward Chapel's next point: that a zoning restriction which denies it the opportunity to operate a parochial school on its Forest Acres site abridges rights protected by the Free Exercise Clause of the First Amendment[20] and by Article I, section 4 of the Alaska Constitution.[21]

The testimony offered at trial establishes that providing a Christian education for children is an integral aspect of the church members' religious beliefs. Parents whose children attend the Seward Chapel school explained that it is important that their children receive an education from which spiritual values are not excluded.[22] In addition, church members testified about the inconvenience that would be caused by requiring Seward Chapel to operate its school in a facility other than the existing church building in Forest Acres, such as the expense of maintaining a separate facility and the inconvenience caused by requiring the pastor, who also acts as principal of the school, to travel between two locations.[23] In short,

19. Seward Chapel points out that its school, which at the time of trial had about a dozen students, does not create any significant impact on the neighborhood, and that the city should have imposed reasonable restrictions on parking and similar land uses rather than wholly excluding the school. At some point, however, the city must be entitled to draw a line between permitted and unacceptable uses of a parcel, and in our view the Due Process Clause does not prevent the city from drawing that line at no schools rather than at schools with a certain number of students or with a certain kind of facility or with other such restrictions.

20. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; . . . ." Rights secured by the First Amendment are protected against state interference by incorporation into the Due Process Clause of the Fourteenth Amendment. *Cantwell v. Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213, 1217–18 (1940).

21. "No law shall be made respecting an establishment of religion, or prohibiting the free exercise thereof."

22. Pastors Pichotta and Murphy of Seward Chapel explained that it is a sin to send children to public school.

23. We note, however, that this inconvenience is attributable in part to Seward Chapel's insistence on constructing its facility in Forest Hills notwithstanding prior notice that the city's zoning ordinances did not permit a parochial school on site. *See supra* note 4 and accompanying text.

it would be more convenient and less expensive for Seward Chapel to operate its school at its existing facility in Forest Acres, and thus there is a burden upon church members' efforts to provide a Christian education for their children as a result of the city's zoning ordinance. Turning first to the federal constitutional issue, the fundamental question is whether the First Amendment requires the city to relieve Seward Chapel of this burden by setting aside its zoning laws.

■■■■ Rights protected by the First Amendment are not immune from governmental regulation; the city may impose reasonable restrictions on the time, place, and manner in which such rights are exercised.[24] A lengthy discussion of the parameters of the federal constitutional limits of a city's zoning power is unnecessary, however, because the Supreme Court has already answered the question whether conflicts between land use regulations and First Amendment values must be resolved against the regulations. The Court has repeatedly dismissed for want of a substantial federal question appeals from state court decisions upholding the validity of zoning ordinances such as the one involved in this case. *See Corporation of Presiding Bishop v. City of Porterville,* 90 Cal.App.2d 656, 203 P.2d 823 (1949) (zoning ordinance excluding churches from residential districts valid), *appeal dismissed,* 338 U.S. 805, 70 S.Ct. 78, 94 L.Ed. 487 (1949); *Allendale Congregation of Jehovah's Witnesses v. Grosman,* 30 N.J. 273, 152 A.2d 569 (N.J.1959) (per curiam) (denial of permit to build a church did not violate First Amendment where church could not comply with regulations governing parking), *appeal dismissed,* 361 U.S. 536, 80 S.Ct. 587, 4 L.Ed.2d 538 (1960); *Damascus Community Church v. Clackamas County,* 610 P.2d 273 (Or.App.1980) (no First Amendment prohibition against preventing church from operating a parochial school in its church building), *appeal dismissed,* 450 U.S. 902, 101 S.Ct. 1336, 67 L.Ed.2d 326 (1981). *See also American Communications Association v. Douds,* 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925 (1950):

> We recently dismissed for want of substantiality an appeal in which a church group contended that its First Amendment rights were violated by a municipal zoning ordinance preventing the building of churches in certain residential areas.

*Id.* at 397–98, 70 S.Ct. at 683–84, 94 L.Ed. at 943. *Cf. State ex rel. Wisconsin Lutheran High School Conference v. Sinar,* 267 Wis. 91, 65 N.W.2d 43 (1954) (sustaining zoning ordinance excluding nonpublic schools over due process and equal protection challenges), *appeal dismissed,* 349 U.S. 913, 75 S.Ct. 604, 99 L.Ed. 1248 (1955).[25] Summary dismissal of an appeal for want of a substantial federal question is a disposition on the merits and, as such, it is binding on this court.[26] In light of the fact that the Supreme Court rejected less than two years ago a constitutional argument virtually identical to the one presented in the case at hand,[27] we are constrained to hold that the First Amendment does not require the city to accommodate the desire of the members of Seward Chapel to provide a Christian

**24.** *See, e.g., Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); *Cox v. New Hampshire,* 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941).

**25.** We are not unaware that courts of other states have concluded in some instances that zoning restrictions on religious uses of property abridge First Amendment rights. *See, e.g., Board of Zoning Appeals v. Decatur, Indiana Company of Jehovah's Witnesses,* 233 Ind. 83, 117 N.E.2d 115, 121 (1954); *Jewish Reconstructionist Synagogue of the North Shore, Inc. v. Incorporated Village of Roslyn Harbor,* 38 N.Y.2d 283, 379 N.Y.S.2d 747, 342 N.E.2d 534 (1975) (plurality), *cert. denied,* 426 U.S. 950, 96 S.Ct. 3171, 49 L.Ed.2d 1187 (1976). In our

view, however, we are not free to disregard decisions of the Supreme Court which leave us no choice but to conclude that the Court's view is that such zoning restrictions are constitutionally permissible.

**26.** *See, e.g., Hicks v. Miranda,* 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223, 236 (1975); C. Wright, Handbook of the Law of Federal Courts § 108, at 551 (3d ed. 1976).

**27.** *Damascus Community Church v. Clackamas County,* 45 Or.App. 1065, 610 P.2d 273 (1980), *appeal dismissed,* 450 U.S. 902, 101 S.Ct. 1336, 67 L.Ed.2d 326 (1981).

education for their children by abandoning the zoning restriction which excludes schools from Forest Acres.[28]

Finally, we address the question whether Article I, section 4 of the Alaska Constitution prevents the city from enforcing its zoning ordinance. Seward Chapel argues that, under our ruling in *Frank v. State,* 604 P.2d 1068 (Alaska 1979), the city must accommodate church members' desire to educate their children in a Christian school and that this duty of accommodation requires the city to permit the Seward Chapel school to operate in Forest Acres.

We do not doubt that the protection accorded religious beliefs by the Alaska Constitution embraces both the right of parents to educate their children in a parochial school [29] and the right of children to attend a parochial rather than public school.[30] Similarly, we agree that had the city attempted a wholesale exclusion of parochial schools from its confines the city's position would be precarious indeed,[31] for the duty of accommodation recognized in *Frank* would surely require the city to provide in its zoning scheme areas where persons may assemble for sectarian purposes.

For the reasons expressed below, however, we believe there is a difference of constitutional significance between an outright ban on parochial schools in any area and a zoning scheme which requires that such schools, like a variety of other land uses, be located in areas in which their impact on surrounding parcels is lessened.

In *Frank,* we reversed on constitutional grounds the appellant's conviction for transporting an illegally taken moose in violation of game regulations. We recognized that the appellant's "deeply rooted religious beliefs" required him to supply moose meat for an Athabascan funeral potlatch and concluded that the state could not force him to choose between abandoning his beliefs and violating the law. Our ruling in *Frank* establishes that there are situations in which the Alaska Constitution requires the state or a municipality to except from a facially neutral law persons whose religious beliefs dictate that they not comply with the law.[32] In short, our constitution prevents a governmental entity from creating situations in which persons are faced with a Hobson's choice: complying with the law or abandoning the precepts of their religion.[33]

**28.** For the reasons set forth in our later discussion of Seward Chapel's claim under Article I, section 4 of the Alaska Constitution we believe Seward Chapel's reliance on the federal "accommodation" cases, *see, e.g., Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972), and *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), is misplaced.

**29.** Were such protection not accorded parents' rights by our state constitution, the federal constitution would require that the state accommodate parents' desire to educate their children in other than public schools. *See Pierce v. Society of the Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925).

**30.** *See Breese v. Smith,* 501 P.2d 159, 167 (Alaska 1972) ("[C]hildren are possessed of fundamental rights under the Alaska constitution.").

**31.** *Cf. Mickens v. City of Kodiak,* 640 P.2d 818 (Alaska 1982) (Article I, section 5 of the Alaska Constitution prevents wholesale ban on nude dancing absent "clear reasons" for the ban). In *Mickens* we did not, however, address the question of the extent to which constitutionally protected speech or activity could be subjected

to zoning restrictions. *See, e.g., Young v. American Mini-Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976).

Where, as here, a zoning scheme as a whole provides adequate areas in which religious uses may locate, we conclude that the exclusion of such a use from a given parcel is permissible if it furthers a legitimate land use objective. In our view the city's objective of providing a quiet residential area free of the distractions which a school may cause is a legitimate one and does not unduly burden the rights of persons wishing to pursue religious goals.

**32.** *See also, e.g., Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); *Wondzell v. Alaska Wood Products, Inc.* (Opinion on Rehearing), 601 P.2d 584 (Alaska 1979).

**33.** There is an exception to this statement. Religiously impelled actions can be forbidden "where they pose 'some substantial threat to public safety, peace or order,' or where there are competing governmental interests that are 'of the highest order and ... [are] not otherwise served.'" *Frank v. State,* 604 P.2d at 1070 (citations omitted).

In the case before us now, however, the city's zoning scheme does not force the members of Seward Chapel to make such a choice, nor does it create an otherwise unacceptable burden upon the exercise of their religious beliefs.

First, although we do not question the sincerity of the church members' conviction that their children should be educated in a Christian school, there has been no showing of a religious belief which requires members of Seward Chapel to locate in Forest Acres. Thus, in this case it cannot be said that the city's zoning ordinance forces members of the church to set aside their beliefs in order to comply with the zoning ordinance. The fact that Seward Chapel would find it more convenient to locate its school in Forest Acres does not mean that the city has imposed an impermissible burden upon church members' rights by requiring that the school be located elsewhere.[34]

Second, the inconvenience and economic burden of which Seward Chapel now complains is caused largely by the choice to build in Forest Acres notwithstanding notice prior to acquiring the site that a parochial school would not be permitted in the area.[35]

■■ In sum, we conclude that the duty to accommodate established by our decision in *Frank* is met by a zoning scheme which includes provisions for areas in which parochial schools and other religious uses of land may locate. We do not agree that the duty of accommodation attaches to each and every parcel within the city's borders.

**34.** By way of analogy, our ruling in *Frank* might well have been different had the state's game regulations not prevented the appellant from providing moose meat for a funeral potlatch but had reasonably limited the areas in which a moose could be taken. Our ruling in *Frank* did not establish that the duty of accommodation requires the state to wholly exempt from game regulations persons claiming interference with their religious beliefs.

**35.** Our ruling today does not foreclose the possibility that a zoning restriction might be impermissible as applied to persons who acquire and develop a site with the understanding that it can be used for a particular purpose. In such a situation a later change in the relevant zoning

## V. ATTORNEY'S FEES

■■ Finally, Seward Chapel argues that the superior court's award of attorney's fees to the city was an abuse of discretion because this case falls within the "public interest" exception to the general rule that an award of partial attorney's fees to a prevailing party is appropriate. We conclude that the superior court's attorney's fees ruling was not an abuse of discretion, for Seward Chapel had a sufficient private incentive to challenge the city's zoning ordinance which removes this case from the purview of the "public interest" exception to awards of attorney's fees.[36]

## VI. CONCLUSION

The decision of the superior court is AFFIRMED.

ordinance which excludes the use for which the parcel was developed might be unacceptable. In the case before us, however, we decline to consider Seward Chapel's development of its site as a factor weighing against enforcement of the city's zoning ordinance because Seward Chapel purchased its site and constructed its facility knowing that a parochial school would not be permitted on the site. *See supra* note 4 and accompanying text.

**36.** *See, e.g., Kenai Lumber Co. v. LeResche,* 646 P.2d 215, 222–23 (Alaska 1982); *Munroe v. City Council,* 545 P.2d 165, 171–72 (Alaska 1976); *Kelly Supply Co., Inc. v. City of Anchorage,* 516 P.2d 1206, 1211 (Alaska 1973).